Rafael A. Soto Vázquez, su esposa Milagros Soto Reinosa, y la Sociedad de Gananciales compuesta por ambos, demandantes y recurridos, *v.* José Rivera Alvarado, su esposa Inocencia Alvarado Peñalvert, y la Sociedad de Gananciales compuesta por ambos, demandados y peticionarios.

*Número:* CC-96-142          *Resuelto:* 9 de diciembre de 1997

*Michel J. Godreau*, abogado de los peticionarios; *Enrique Nassar Rizek*, abogado de la parte recurrida; *Modesta del Carmen Alberty Vélez*, Directora de la Oficina de Asuntos

de la Mujer, y *Manuel Fermín Arraiza Reyes*, Presidente del Colegio de Abogados de Puerto Rico, ambos en calidad de *amicus curiae*.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

La Ley Núm. 51 de 21 de mayo de 1976 (31 L.P.R.A. secs. 284, 286, 3661, 3672, 3671 y 3717) tuvo como objetivo equiparar a la mujer respecto del hombre en las relaciones económicas propias del matrimonio y establecer el principio de la coadministración de la sociedad legal de gananciales. A su vez, al enmendar ciertos artículos del Código Civil de Puerto Rico estableció el consentimiento escrito como necesario para la enajenación de los bienes gananciales con ciertas excepciones en el caso de los bienes muebles. En este contexto, nos corresponde determinar el efecto de la ausencia del consentimiento escrito de un cónyuge en la enajenación de bienes gananciales. Por entender que el consentimiento escrito es indispensable para la plena eficacia de la enajenación de los bienes gananciales y que su ausencia hace del negocio de enajenación uno *ultra vires* pero ratificable, revocamos la sentencia emitida en el caso de autos por el Tribunal de Circuito de Apelaciones.

I

Los esposos Rafael Soto Vázquez y Rosa M. Soto Reinosa (esposos Soto-Soto) junto a los esposos José Rivera Alvarado e Inocencia Alvarado Peñalvert (esposos Rivera-Alvarado) son copropietarios de un cincuenta por ciento (50%) de los Supermercados del Este, con establecimientos en Humacao, San Lorenzo y Yabucoa. En diciembre de 1991, Rafael Soto y José Rivera suscribieron un contrato redactado a mano por el Lcdo. Telesforo Rosa Resto, que transcribimos a continuación:

## ACUERDO

En Humacao, P.R., a 11 de diciembre de 1991.

### COMPARECEN

De la 1ra Parte: Don José Rivera Alvarado, mayor de edad, casado, comerciante y vecino de Humacao, quien comparece por sí y en representación de la Sociedad de Gananciales que tiene constituida con Doña Inocencia Alvarado Peñalvert.

De la 2da Parte: Don Rafael Ángel Soto Vázquez, mayor de edad, casado, comerciante y vecino de Humacao, quien comparece por sí y en representación de la Sociedad de Gananciales que tiene constituida con Doña Milagros Soto Reinosa.

### EXPONEN

Primero: Los comparecientes son socios a base de un 50% (Cincuenta Por Ciento) en varios negocios, unos incorporados y otros no, a saber: Supermercado del Este en Humacao, Supermercado del Este en San Lorenzo, Supermercado del Este en Yabucoa Pueblo y Supermercado del Este en Yabucoa (Fuera del Pueblo).

Segundo: Que los comparecientes desean cesar la asociación comercial que han mantenido hasta el presente.

Tercero: Que a dichos efectos los comparecientes tasan en $4,000,000 (Cuatro Millones de Dólares) el haber neto o capital social neto, incluyendo sin limitación los muebles e inmuebles, inventario y plusvalía de los cuatro negocios en que son socios en un 50% cada socio o accionistas corporativos en la misma proporción.

Cuarto: El compareciente de la Primera Parte (José Rivera) acuerda vender y vende y el compareciente de la Segunda Parte (Rafael Soto) acuerda comprar y compra la participación de 50% de don José Rivera Alvarado y esposa por el convenido y ajustado precio de $2,000,000 (Dos Millones de Dólares).

### MODO DE PAGO Y OTRAS CONDICIONES

Quinto: El pago del precio lo hará el comprador de la siguiente manera: (a) Un primer pago de $500,000.00 (Medio Millón al momento del cierre y otorgamiento de los documentos correspondientes; (b) Un segundo pago de $500,000.00 (Medio Millón) no más tarde de 15 (Quince) meses a contar de la fecha del primer pago; (c) los restantes $1,000,000 (Un Millón) en Ochenticuatro [sic] (84) pagos iguales de $11,904.76 (Once Mil Novecientos Cuatro con Setentiseis [sic]), libre de intereses todos los pagos, comenzando en el mes número dieciséis (16) desde el Primer Pago.

Sexto: El comprador se obliga a y asume todas las deudas, obligaciones y compromisos de los negocios en su totalidad, incluyendo todo riesgo contributivo, pago de contribuciones, pagos a suplidores, pagos de hipotecas sobre muebles, pago de hipotecas sobre inmuebles, pagos a empleados y todo pago pendiente o necesario para la operación de todos y cada uno de los negocios.

Séptimo: Es condición esencial que el comprador obtendrá el relevo del vendedor de toda obligación relacionada con los negocios incluyendo relevos en los bancos y ante los suplidores con los que existen compromisos o deudas pendientes de pago total o parcialmente.

## GARANTIAS

Octavo: El comprador garantizará el pago aplazado con prenda sobre todas las acciones de los negocios incorporados y además incorporará los que no lo estén de manera que se prenden todas las acciones. El comprador se obliga a no contraer hipotecas inmuebles adicionales a las ya existentes de manera que no se menoscaben las garantías a favor del vendedor.

Noveno: Los gastos legales serán de cargo del comprador y las partes acuerdan y designan al Lcdo. Telesforo Rosa Resto para que haga la redacción y otorgamiento de todos los contratos necesarios y pertinentes.

Tal es el acuerdo de las partes y obligados a otorgar todos los documentos que fuere menester, firman el presente en el lugar y fecha al inicio de este documento indicados.

(Fdo) José Rivera Alvarado (Fdo) Rafael A. Soto Vázquez

Las partes aclaran que para el caso de que el vendedor decidiera vender en el futuro el negocio conocido como Plaza del Este y los bienes de Almacén Los Pinos, Inc., el aquí comprador tendrá la primera opción.

(Fdo) José Rivera Alvarado (Fdo) Rafael A. Soto Vázquez. Apéndice, págs. 4–6.

Mientras el licenciado Rosa Resto redactaba el documento transcrito, se presentó al lugar de la reunión la esposa de José Rivera, Inocencia Alvarado. Ninguna de las esposas de los contratantes firmó el acuerdo.

Al día siguiente de haberse otorgado el documento, José Rivera se comunicó con Rafael Soto y con el licenciado Rosa

Resto para informarle que la transacción no habría de perfeccionarse. Así las cosas, los esposos Soto-Soto presentaron una demanda sobre consignación y cumplimiento específico de contrato contra los esposos Rivera-Alvarado y la sociedad legal de gananciales que éstos componen. Alegaron que el contrato realizado era de compraventa y solicitaron al tribunal que determinara su validez y la procedencia de la consignación de quinientos mil dólares ($500,000) como su pago inicial. A su vez, solicitaron el otorgamiento de los documentos correspondientes.

Posteriormente, Inocencia Alvarado contestó la demanda e instó reconvención. Admitió que su esposo había suscrito el acuerdo pero aseveró que éste era nulo o anulable. Reclamó, a su vez, una indemnización por daños y perjuicios a los esposos Soto-Soto haber usurpado los poderes y las facultades de las empresas corporativas, sociales o mancomunadas en las que las partes tienen intereses comunes.

José Rivera, por su parte, contestó la demanda e instó reconvención. Alegó que el documento no constituía un contrato de compraventa y presentó como defensa que el consentimiento que prestó al acuerdo estuvo viciado por error y dolo.

Luego de otros trámites procesales, Inocencia Alvarado presentó una moción de sentencia sumaria. Señaló que el contrato suscrito no era válido pues, tratándose de la enajenación de bienes gananciales, el consentimiento escrito de ambos cónyuges era requisito indispensable. Alegó que la ausencia de su firma en el acuerdo suscrito por su esposo era prueba de que ella se negó a prestar su consentimiento.

Los esposos Soto-Soto se opusieron a que se dictara sentencia sumariamente. Argumentaron que Inocencia Alvarado estuvo presente durante la firma del contrato y no manifestó su desacuerdo con éste. Indicaron que en ese momento ella inquirió al licenciado Rosa Resto sobre el

precio aplazado pactado y que estuvo conforme con la explicación que éste le brindara. A su vez, Rafael Soto solicitó que se dictara sentencia sumaria parcial a su favor.

El tribunal de primera instancia dictó sentencia sumaria en la que concluyó que el acuerdo en controversia constituía un acto de disposición de bienes muebles e inmuebles pertenecientes a la sociedad de bienes gananciales de los esposos Rivera-Alvarado que requería para su validez el consentimiento por escrito de ambos cónyuges. Posteriormente declaró sin lugar la solicitud de sentencia sumaria presentada por los esposos Soto-Soto.

Inconformes con esta determinación los esposos Soto-Soto presentaron un recurso de *certiorari* ante el Tribunal de Circuito de Apelaciones. En sentencia emitida por el panel de jueces compuesto por su presidente, Juez señor Amadeo Murga, la Juez señora Pesante Martínez y el Juez ponente señor Rivera Pérez se revocó la sentencia sumaria emitida por el tribunal de primera instancia al concluir que existía una controversia real sobre si Inocencia Alvarado consintió o no a la venta del bien ganancial, y que el acuerdo firmado no era un contrato de compraventa sino una promesa bilateral de compraventa. A su vez, se confirmó la resolución que denegaba la solicitud de sentencia sumaria contra José Rivera. El Tribunal de Circuito de Apelaciones devolvió el caso al tribunal de instancia para que éste pasara prueba sobre si hubo consentimiento tácito.

Inocencia Alvarado, inconforme con esta determinación, presentó un escrito de *certiorari* ante nos, por sí y en representación de la sociedad de gananciales compuesta con su esposo José Rivera, y solicitó la revocación de la sentencia emitida por el Tribunal de Circuito de Apelaciones. Señala que erró el Tribunal de Circuito de Apelaciones: (1) al pasar por alto hechos incontrovertidos fundamentales que evidencian tanto la oposición de Inocencia Alvarado al ne-

gocio de enajenación propuesto por los maridos como la imposibilidad de la ratificación de dicho negocio; (2) al devolver a instancia para que determinara si la peticionaria consintió al perfeccionamiento del precontrato cuando, de así determinarse, el precontrato tampoco serviría de justo título para la transferencia del dominio; (3) al abrir las puertas para que el consentimiento tácito vía inacción o silencio del cónyuge pueda invocarse como base, no ya sólo de la ratificación de una enajenación de bienes gananciales, sino como base del perfeccionamiento mismo de la venta, lo cual iría en contra de la Ley Núm. 51, *supra*, y (4) al considerar que el acuerdo referido, aun cuando versara sobre la enajenación de muebles gananciales, pudiera subsumirse bajo la excepción al consentimiento por escrito del cónyuge dispuesta en el Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3672.

Para fines de análisis sintetizamos los errores señalados en dos (2): error al concluir que el acuerdo no es un contrato de compraventa y error al no requerir el consentimiento escrito de los cónyuges en el tipo de negocio plasmado en el acuerdo. Acogido el recurso como una apelación,[1] discutiremos primeramente ante qué tipo de negocio nos encontramos. En segundo lugar, determinaremos el tipo de consentimiento necesario en ese tipo de contrato para que sea eficaz; finalmente, evaluaremos si procedía o no dictar la sentencia sumaria.

---

[1] El escrito de *certiorari*, si bien fue presentado después de 1ro de mayo de 1996, el término para recurrir en alzada comenzó a transcurrir el 19 de abril de 1996, por lo que aplica la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 1994. En virtud de esta ley, el recurso apropiado es la apelación y no el *certiorari*. Art. 3.002(f) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 1994 (4 L.P.R.A. sec. 22i(f)).

## II

Para determinar qué tipo de negocio suscribieron Rafael Soto y José Rivera es necesario prestar particular atención a la intención de las partes al momento de firmar el documento. Revisaremos a continuación la naturaleza de los contratos de compraventa y de promesa bilateral de compraventa.

El contrato de compraventa está expresamente regulado en el Código Civil de Puerto Rico. Arts. 1334–1427 (31 L.P.R.A. secs. 3741–3961). El Art. 1334 del Código Civil establece: "Por el contrato de compra y venta uno de los contratantes se obliga entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente." 31 L.P.R.A. sec. 3741. Los tres (3) elementos de la compraventa son el consentimiento, la cosa y el precio. Véase J. Castán, *Derecho Civil español, común y foral*, 12ma ed., Madrid, Ed. Reus, 1985, T. IV, pág. 65. El Art. 1339 del Código Civil, por su parte, establece que "[l]a venta se perfeccionará entre comprador y vendedor, y será obligatoria para ambos, si hubieren convenido en la cosa objeto del contrato, y en el precio, aunque ni la una ni la otra se hayan entregado". 31 L.P.R.A. sec. 3746.

Por su parte, la promesa de vender y comprar está dispuesta en el Art. 1340 del Código Civil: "La promesa de vender o comprar, habiendo conformidad en la cosa y en el precio, dará derecho a los contratantes para reclamar recíprocamente el cumplimiento del contrato." 31 L.P.R.A. sec. 3747. Este tipo de contrato no crea un derecho real sino una obligación personal que no confiere título de dominio sobre la propiedad en cuestión. *Jordán-Rojas v. Padró González*, 103 D.P.R. 813, 817 (1975). A su vez, la promesa de venta es un contrato preparatorio que produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la

realización de un contrato de compraventa futura. *Jordán-Rojas v. Padró González*, supra, pág. 818.

Al analizar el acuerdo suscrito por José Rivera y Rafael Soto en representación de sus respectivas sociedades legales de gananciales, notamos que de su propio texto surge que no se pactaron promesas de venta o de compra, sino que el vendedor "acuerda vender y *vende*" y el comprador "acuerda comprar y *compra*". (Énfasis suplido.) El precio estaba claramente estipulado así como los términos de pago. El contrato lo que contenía era ciertas condiciones para que la venta pudiera consumarse mediante el otorgamiento de las escrituras correspondientes. El propósito del acuerdo era la enajenación de los bienes gananciales pertenecientes a los esposos Rivera-Alvarado. Del texto no surge una necesidad ulterior de negociación. Resolvemos que lo pactado fue una verdadera compraventa, por lo que el Tribunal de Circuito de Apelaciones erró al concluir que José Rivera y Rafael Soto otorgaron un contrato de promesa bilateral de compraventa.

## III

Tras determinar que el acuerdo suscrito por José Rivera y Rafael Soto fue un contrato de compraventa debemos establecer el tipo de consentimiento necesario por parte de los cónyuges para que éste sea válido. En este contexto, revisaremos los cambios realizados a nuestro Código Civil en 1976, que configuraron lo que se conoce como la Reforma de 1976.

A. Previo a 1976 el Código Civil de Puerto Rico, en sus Arts. 91 (31 L.P.R.A. sec. 3672) y 1313 (31 L.P.R.A. sec. 284), reconocía la facultad del marido para administrar los bienes de la sociedad legal de gananciales y, en particular, disponía que los bienes inmuebles pertenecientes a ésta no podrían ser enajenados o gravados so pena de nulidad, sino mediante el consentimiento expreso de ambos cónyuges.

En el caso *Madera v. Metropolitan Const. Corp.*, 95 D.P.R. 637 (1967), este Tribunal interpretó que la ausencia de consentimiento expreso por parte de uno de los cónyuges hacía del negocio uno ratificable. *Madera*, supra, pág. 645. A su vez, se estableció que la ratificación podía ser expresa o tácita y que el consentimiento expreso no significaba por escrito, "pues si tal hubiera sido el caso fácil hubiese sido indicar que se necesitaba el consentimiento escrito". *Madera*, supra, pág. 647.

Mediante la Ley Núm. 51, *supra*, la Asamblea Legislativa incorporó el requisito de consentimiento escrito para la enajenación de bienes gananciales, con ciertas excepciones en el caso de bienes muebles. La Ley Núm. 51, *supra*, enmendó los Arts. 91, 93, 1308 y 1313, y derogó los Arts. 1312 y 1333 del Código Civil, *supra*.

■ La finalidad de la citada Ley Núm. 51 era la de eliminar el amplísimo poder que disfrutaba el marido, a la vez que incorporar a la mujer a la gestión económica del matrimonio a través de la coadministración y corepresentación de la sociedad. I. Picó Vidal, *Derecho de familia y cambio social: una interpretación histórico-social de la reforma de la administración de los bienes gananciales*, 55 Rev. Jur. U.P.R. 537, 548 (1986). Mediante su aprobación quedó establecido en nuestra jurisdicción el régimen de la coadministración de la sociedad legal de gananciales.

De la letra e historial legislativo de la citada Ley Núm. 51 "se desprenden claramente tres objetivos básicos inspiradores de la reforma: en primer lugar, la equiparación de la mujer respecto del hombre en las relaciones económicas del matrimonio; segundo, ... la protección del haber conyugal frente a las actuaciones unilaterales de uno de los cónyuges y, tercero, ... el interés del legislador por la protección de los terceros frente a la sociedad de gananciales". Picó Vidal, *supra*, pág. 547.

■ El Art. 91, según enmendado, establece:

Ambos cónyuges serán los administradores de los bienes de la sociedad conyugal, salvo estipulación en contrario, en cuyo caso uno de los cónyuges otorgará mandato para que el otro actúe como administrador de la sociedad.

Las compras que con dichos bienes haga cualquiera de los cónyuges serán válidas cuando se refieran a cosas destinadas al uso de la familia o personales de acuerdo con la posición social y económica de ésta. Disponiéndose que cualquiera de los cónyuges podrá efectuar dichas compras en efectivo o a crédito.

*Los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento escrito de ambos cónyuges.* Nada de lo antes dispuesto se interpretará a los efectos de limitar la libertad de los futuros cónyuges de otorgar capitulaciones matrimoniales. (Énfasis suplido.) 31 L.P.R.A. sec. 284.

De esta manera la Asamblea Legislativa incorporó específicamente el requisito de consentimiento escrito, so pena de nulidad, cuando se enajenaran o gravaran bienes inmuebles.

Es en el caso de los bienes muebles que existen ciertas excepciones al requisito del consentimiento escrito para enajenar, las cuales se recogen en el Art. 1313 del Código Civil, *supra*:

No obstante lo dispuesto en el [Art. 91], ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, *sin el consentimiento escrito del otro cónyuge,* excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges.

. . . . . .

El cónyuge que se dedicare al comercio, industria, o profesión podrá adquirir o disponer de los *bienes muebles* dedicados a esos fines, por justa causa, *sin el consentimiento del otro cónyuge.* No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales. (Énfasis suplido.) 31 L.P.R.A. sec. 3672.

■ Quedan establecidas en el Art. 1313 del Código Civil, *supra*, las únicas excepciones al requisito de consentimiento escrito para enajenar bienes muebles: cuando se trate de cosas destinadas al uso de la familia o personales, o cuando el cónyuge se dedicare al comercio, la industria o la profesión y enajenara bienes muebles dedicados a esos fines cuando mediara justa causa. Nótese que en nuestra jurisdicción no existe excepción alguna al requisito de consentimiento escrito para la enajenación de bienes inmuebles gananciales. Véase el Segundo Informe de la Comisión de lo Jurídico Civil a la Cámara de Representantes sobre el P. de la C. Núm. 44 de 6 de mayo de 1975, 7ma Asamblea Legislativa, 3ra Sesión Ordinaria.

El requisito del *consentimiento escrito* para *enajenar un inmueble ganancial* surgió como parte de la Reforma de 1976, en la cual se designaron ambos cónyuges como coadministradores de la sociedad legal de gananciales. Se perseguía equiparar los derechos de la esposa con los del esposo y evitar que el marido pudiera disponer de los bienes conjuntos sin que ella lo conociera y consintiera. Al establecer que es necesario cumplir con el requisito del consentimiento escrito para que la enajenación sea válida, se cumple con el propósito perseguido al asegurarse que la esposa conozca la transacción y esté de acuerdo con ella.

Siendo fieles a la letra y a la intención legislativa tras la aprobación de los Arts. 91 y 1313 del Código Civil, *supra*, resolvemos que el consentimiento escrito de los cónyuges es un requisito indispensable para la enajenación de bienes inmuebles gananciales. También es requisito indispensable para la enajenación de los bienes muebles gananciales a menos que se trate de uno de los supuestos de excepción reconocidos en el Art. 1313 del Código Civil, *supra*. A continuación evaluaremos el efecto de la ausencia de consentimiento escrito en la enajenación de bienes gananciales.

■ B. En Puerto Rico el Art. 93 del Código Civil, *supra*, establece que cualquiera de los cónyuges puede representar a la sociedad legal de gananciales:

> Salvo lo dispuesto en el artículo 91 de este código, cualquiera de los cónyuges *podrá representar legalmente a la sociedad conyugal*. Cualquier acto de administración unilateral de uno de los cónyuges obligará a la sociedad legal de gananciales y se presumirá válido a todos los efectos legales. (Énfasis suplido.) 31 L.P.R.A. sec. 286.

■ Cuando uno de los cónyuges se excede en sus atribuciones al representar a la sociedad legal de gananciales, sus actos son *ultra vires*[2] y no surtirán efecto jurídico hasta tanto no sean ratificados por el otro cónyuge. Mientras no se ratifique el negocio no hay consentimiento.[3]

En el contexto del exceso de poder de representación es que opera la figura de la *ratificación*.[4] Los negocios, en los cuales falte el consentimiento requerido por el ordenamiento legal al momento de otorgarlos, son negocios ratificables. *Trabal Morales v. Ruiz Rodríguez*, 125 D.P.R. 340 (1990).

■ La figura de la ratificación opera exclusivamente en el campo del mandato o de la representación. E. Serrano Alonso, *La confirmación de los negocios jurídicos*, Madrid, Ed. Tecnos, 1976, pág. 35; J. Puig Brutau, *Fundamentos de derecho civil*, 2da ed., Barcelona, Ed. Bosch, 1978, T. II,

---

[2] Utilizamos el término *ultra vires* para referirnos a los actos o negocios realizados en exceso de la autoridad inherente o la concedida. Véase I. Rivera García, *Diccionario de términos jurídicos*, New Hampshire, Ed. Equity, 1985, pág. 438.

[3] Si bien la falta de consentimiento hace del negocio uno nulo de pleno derecho, preferimos utilizar el término *ultra vires* para enfatizar la posibilidad de que sea posteriormente ratificado en las situaciones como las del caso de autos. Por el contrario, en los casos de nulidad de pleno derecho, cuando el contrato carece absolutamente de validez, lo que procede es la nueva celebración del contrato con todos sus requisitos. J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1978, T. II, Vol. 1, pág. 309.

[4] *Ratificar*, etimológicamente hablando, significa "aprobar lo hecho por otro". T. Bernardini de la Huerta, *Ratificación y Confirmación*, 5 Rev. Jur. U.P.R. 149 (1936).

Vol. 1, pág. 328. Respecto a la ratificación y la confirmación ha existido cierta confusión en nuestra jurisdicción la cual debemos disipar.

■ La confirmación opera en los negocios anulables por vicio en el consentimiento (error, dolo, intimidación o violencia). Estos negocios anulables surten efecto jurídico desde su otorgamiento y sólo la persona que sufrió del vicio en el consentimiento es quien puede impugnarlo dentro del plazo establecido de cuatro (4) años. En este tipo de negocio el consentimiento ha existido, aunque viciado. La persona afectada puede confirmar el negocio y así renunciar a su acción de impugnación. Véase el Art. 1262 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3521.

■ Por su parte, en los negocios ratificables una parte actuó *ultra vires* al excederse en su capacidad de representación. Por lo tanto, el negocio es ineficaz y no surte efecto jurídico alguno hasta tanto no sea ratificado ya que falta el consentimiento de la verdadera parte contratante. Ese consentimiento es suplido mediante la ratificación. Véanse: Art. 1211 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3376; Serrano Alonso, *op. cit.*, págs. 34–37; Puig Brutau, *op. cit.*, págs. 328–331.

Como señala Serrano Alonso:

> La ratificación opera cuando la persona perjudicada por el hecho realizado por el representante excediéndose en sus atribuciones, manifiesta su voluntad de aceptar lo realizado por aquél, produciendo los mismos efectos que si el acto realizado por el representante hubiese entrado dentro de los límites del poder concedido. ...
>
> ... [C]onfirmación y ratificación son figuras jurídicas distintas con campos de aplicación diversos y con la única aparente semejanza de su finalidad que es en ambos casos la producción de efectos jurídicos por parte del negocio originariamente ineficaz o viciado; pero se distinguen por el distinto ámbito de estos efectos. *En el negocio ratificado los efectos comienzan en el momento de la realización de dicho acto* y el negocio se considera como válidamente celebrado por el ... representante, si bien lo

cierto es que el negocio desde su celebración hasta el momento de su ratificación *no ha podido producir efectos frente al mandante, pues el negocio era para él inexistente*, por el contrario, en el caso de confirmación de un negocio afectado de vicio subsanable (anulabilidad) el negocio ha producido libremente sus efectos desde el comienzo, ya que el vicio no afectaba para nada a la existencia del negocio, sino a la duración de los efectos. Hasta el momento de la confirmación los efectos tenían un carácter transitorio o provisional, mas devienen definitivos una vez que se ha operado la confirmación. (Énfasis suplido.) Serrano Alonso, *op. cit.*, págs. 35–36.

Revisada la naturaleza de la confirmación y la ratificación, evaluemos el carácter ratificable del negocio de enajenación de bienes inmuebles o muebles(⁵) gananciales realizado por un cónyuge sin el consentimiento escrito de el otro.

■ Resolvemos que el otorgamiento de un contrato en el que se enajenen bienes gananciales sin el consentimiento escrito de ambos cónyuges (salvo las excepciones reconocidas en el Art. 1313 del Código Civil, *supra*, para el caso de los bienes muebles) convierte a dicho negocio en uno *ultra vires*. A su vez, dicho negocio sólo podrá ser ratificado por escrito para que produzca efectos jurídicos. Los efectos del negocio que se otorgó sin el consentimiento escrito del otro cónyuge comenzarán en el momento de la ratificación.

## IV

En el caso de autos, Rafael Soto y José Rivera suscribieron un contrato de compraventa. En éste, José Rivera vendía su participación de cincuenta por ciento (50%) en la asociación comercial que había mantenido con Rafael Soto, representando ambos a sus respectivas sociedades legales de gananciales. El contrato incluía "el haber neto o capital

---

(⁵) Esto es en aquellos supuestos en los cuales es necesario el consentimiento escrito de ambos cónyuges para enajenar bienes muebles gananciales.

social neto, incluyendo sin limitación los muebles e inmuebles, inventario y plusvalía de los cuatro negocios en que [eran] socios en un 50%".

De una lectura del acuerdo suscrito entre Rafael Soto y José Rivera se desprende que en la transacción se incluía la enajenación tanto de bienes muebles como de inmuebles. Por incluir la transacción la enajenación de bienes inmuebles gananciales se activa lo establecido en el Art. 91 del Código Civil, *supra*, es decir, se necesitaba el consentimiento escrito de ambos cónyuges. En ese sentido prudencialmente nos abstenemos de pronunciar si en el caso de autos aplica alguna de las excepciones establecidas en el Art. 1313 del Código Civil, *supra*, para prescindir del requisito de consentimiento escrito para la validez de la enajenación de bienes muebles gananciales.

Para que el acuerdo fuera válido se requería el consentimiento escrito de ambos cónyuges. La ausencia de este requisito convierte el negocio plasmado en el acuerdo en uno *ultra vires*. Ahora bien, éste, aunque no tiene efectos jurídicos, puede ser ratificado por tratarse de una representación excesiva por parte del marido. De esta manera Inocencia Alvarado pudo haber ratificado por escrito el acuerdo para así otorgarle plena eficacia. Sin embargo, ésta no lo ha ratificado. Por el contrario, en su contestación a la demanda, la solicitud de sentencia sumaria y en su alegato ante esta Curia ha insistido en su ineficacia.

Resolvemos que el contrato suscrito por Rafael Soto y José Rivera es *ultra vires*, por lo que no ha producido ningún efecto jurídico. Como no ha sido ratificado por escrito por Inocencia Alvarado, éste continúa siendo ineficaz.

De manera que resolvemos que es un requisito indispensable para la eficacia de la enajenación de bienes gananciales —salvo en aquellos supuestos de excepción reconocidos para el caso de bienes muebles— el consentimiento escrito de ambos cónyuges o la posterior ratificación por escrito del negocio.

## V

■ Finalmente nos resta determinar si procedía la adjudicación del caso de autos mediante el mecanismo de sentencia sumaria.

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, regula el procedimiento para solicitar que se dicte sentencia sumaria. El tribunal queda facultado para que, discrecionalmente, dicte sentencia a favor de una parte cuando de los documentos no controvertidos que se acompañan con la solicitud surja que no existe disputa de hecho a ser dirimida y que sólo resta aplicar el derecho. *Neca Mort. Corp. v. A & W Dev. S.E.*, 137 D.P.R. 860 (1995); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986). La razón principal de la moción de sentencia sumaria es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de un juicio en su fondo. *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624 (1994); *Worldwide Food Dis., Inc. v. Colón et al.*, 133 D.P.R. 827 (1993); *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992).

■ La parte solicitante tiene que demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que procede se dicte sentencia a su favor como cuestión de derecho. *Pilot Life Ins. Co. v. Crespo Martínez*, supra. La parte opositora se ve entonces en la posición de poner en controversia los hechos presentados por el promovente. *Pilot Life Ins. Co. v. Crespo Martínez*, supra; *Toledo Maldonado v. Cartagena Ortiz*, 132 D.P.R. 249 (1992).

En el caso de autos no hay controversia de hecho referente a que Inocencia Alvarado no prestó su consentimiento escrito al negocio acordado entre su esposo y Rafael Soto. Tampoco hay controversia en torno a que no lo ratificó por escrito. Hemos resuelto que —como cuestión de

derecho— la ausencia de consentimiento escrito hace del negocio uno ineficaz. Procede dictar la sentencia sumaria a favor de Inocencia Alvarado y la sociedad legal de gananciales que compone con su esposo José Rivera. Concluimos que erró el Tribunal de Circuito de Apelaciones al revocar la sentencia sumaria dictada correctamente por el tribunal de primera instancia.

## VI

En resumen, el propósito de la Reforma de 1976 fue de equiparar a la mujer respecto a la posición que tenía el hombre en la administración de los bienes gananciales. A tono con el propósito y el espíritu de dicha reforma, resolvemos que la ausencia de consentimiento escrito hace de la enajenación de bienes gananciales una *ultra vires*. Sólo la ratificación por escrito podría darle plena eficacia al negocio jurídico.

Por los fundamentos antes expresados, *se revoca la sentencia emitida por el Tribunal de Circuito de Apelaciones y se reinstala la sentencia sumaria dictada por el Tribunal de Primera Instancia a favor de Inocencia Alvarado y la sociedad legal de gananciales que tiene compuesta con su esposo José Rivera. Se devuelve el caso al tribunal de instancia para la continuación de los procedimientos referentes a la reconvención presentada por Inocencia Alvarado contra los esposos Soto-Soto.*

El Juez Asociado Señor Negrón García emitió una opinión concurrente. El Juez Asociado Señor Rebollo López se inhibió.

## — O —

Opinión concurrente del Juez Asociado Señor Negrón García.

### I

Es nula la compraventa millonaria entre los Sres. Rafael Soto Vázquez y José Rivera Alvarado de bienes muebles e inmuebles gananciales, sin el consentimiento de la Sra. Inocencia Alvarado Peñalvert, esposa de Rivera Alvarado. Art. 1313 del Código Civil, 31 L.P.R.A. sec. 3673.([1])

Recordamos que en *Padró Collado v. Espada*, 111 D.P.R. 56 (1981) —negocio bastante similar al de autos, con la variante de que no se enajenaron bienes inmuebles— disentimos del criterio mayoritario. Allí se validó la compra de una participación en la sociedad dedicada a la compraventa de productos de consumo en un supermercado. Dijimos:

> ... [D]ifícil sostener que la compra realizada sea una a la cual se dedica corrientemente en su gestión, ya que no trafica en la compra y venta de participaciones en sociedades. Él, al igual que sus socios, es comerciante de productos de consumo y *no de participaciones en sociedades.*
>
> No estando la transacción aquí envuelta dentro de las permitidas y contempladas, por excepción en el último párrafo del

---

([1]) *Dispone, en lo pertinente:*

"No obstante lo dispuesto en la sec. 284 de este título, ninguno de los dos podrá donar, *enajenar*, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, *sin el consentimiento escrito del otro cónyuge*, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges.

"El cónyuge que se dedicare al comercio, industria o profesión, podrá adquirir o disponer de los bienes *muebles* dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales. Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales." (Énfasis suplido.) 31 L.P.R.A. sec. 3672.

Art. 1313, es ineludible concluir que para efectuarla requería el consentimiento escrito de su esposa Gilda González. (Énfasis suplido.) *Padró Collado v. Espada*, supra, pág. 72, opinión disidente.

## II

Década y media después nos enfrentamos a hechos muy parecidos. Aquí Rivera Alvarado y Soto Vázquez eran copropietarios, cada uno en cincuenta por ciento (50%), de varios supermercados dedicados a la venta de productos de consumo. Para fines del Art. 1313 del Código Civil, *supra, difícilmente podemos clasificar como comercial la venta de toda participación en dichos supermercados.* Por su naturaleza no está exenta del consentimiento de ambos cónyuges.

La excepción del Art. 1313 del Código Civil, *supra*, persigue facilitar las operaciones del cónyuge dedicado al comercio, la industria o la profesión, sin que sea menester el consentimiento del otro cónyuge para obligar a la sociedad de gananciales en aquellos negocios ordinarios, incidentales e inherentes a la actividad en cuestión. La venta de toda la participación dista de ser la operación diaria de un supermercado. Permitirlo atenta contra la legislación de 1976 en su esfuerzo de equiparar verdaderamente a la mujer con el hombre en la administración de la sociedad legal de gananciales.

En resumen, concurrimos con la opinión del Tribunal que anula el negocio entre Soto Vázquez y Rivera Alvarado por dos (2) razones, a saber, la enajenación de bienes inmuebles fue sin consentimiento de su esposa y no constituyó una compraventa de bienes relacionada con el comercio.