# 2004 DTA 85

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGION JUDICIAL DE SAN JUAN**

LUIS E. TORRES OLIVERA, IVONNE D. FERNANDEZ CHEVALIER Y LA
SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Recurridos

v.

MARCOM GROUP, MTVE, INC., PRODUCCIONES HECTOR MARCANO,
HECTOR MARCANO, HECTOR VALENTIN, JANE DOE, MARY ROE,
RAYCOM MEDIA, TELEONCE
Peticionarios

Núm. KLCE-04-00068

San Juan, Puerto Rico, a 31 de marzo de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez, la Juez
Pabón Charneco y el Juez Rivera Martínez

Brau Ramírez, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

**I**

El presente recurso se origina con una *"broma"* llevada a cabo el 24 de mayo de 2000 por los productores del Programa de Televisión *"Super Show"* sobre la persona del recurrido Luis Torres Olivera.

Al momento de los hechos, el Programa en cuestión se transmitía diariamente por el Canal 11 de la

televisión local, estación Teleonce, el cual estaba operado por Raycom Media, Inc. ("*Raycom*"). Dicho programa era producido por el animador Héctor Marcano, con la colaboración de Héctor Valentín, a través de las entidades Producciones Héctor Marcano, Marcom Group ("*Marcom*"), y/o MTVE, Inc ("*MTVE*").

El día de los hechos, los productores del Programa contrataron a dos mujeres jóvenes, denominadas en este procedimiento como "*Jane Doe*" y "*Mary Roe*" para llevar a cabo una broma para el segmento del programa denominado "*La Misión*". La broma consistía en que las jóvenes agarraran y apretaran las nalgas de transeúntes en el Viejo San Juan.

Entre otras personas objeto de dicha "*broma*", se encontraba el recurrido Luis Torres Olivera, quien ese día caminaba por los alrededores del Correo del Viejo San Juan, y quien fue víctima de la burla mencionada. El recurrido se queja de que la agresión inesperada por parte de las empleadas del Programa le produjo susto, ya que luego de tocarlo las jóvenes lo siguieron por un trayecto, llevándolo a temer que se trataba de un asalto o intento de secuestro. El recurrido alega que sufrió una profunda vergüenza y humillación, ya que los hechos sucedieron cerca de su lugar de empleo y sus compañeros de trabajo se enteraron de lo sucedido.

El recurrido se quejó ante los empleados del Programa y presentó una querella por la agresión. Esto llevó a que los productores del Programa informaran durante su transmisión que algunas personas se habían quejado, haciendo comentarios que cuestionaban la hombría del recurrido. Esta información fue posteriormente difundida por los medios de comunicación, mencionándose específicamente el nombre del recurrido en relación con los hechos, lo que también afectó a éste.

El 1ro de diciembre de 2000, el recurrido, en unión a su esposa, instó la presente demanda contra las partes de epígrafe ante el Tribunal de Primera Instancia, Sala Superior de San Juan, solicitando compensación por los daños ocasionados. En su demanda, la parte recurrida alegó que Marcom, MTVE, Producciones Héctor Marcano, Héctor Marcano y Héctor Valentín, eran "*entidades dueñas, productoras o relacionadas a la producción del programa 'Super Show'...*".

El Tribunal de Primera Instancia procedió a emitir los emplazamientos de la demanda. Marcom fue emplazada en diciembre de 2000 y contestó la demanda, negando las alegaciones. Los otros codemandados no fueron emplazados.

El 27 de diciembre de 2001, el Tribunal de Primera Instancia emitió sentencia parcial desestimando la demanda con perjuicio en cuanto a "*todas las partes con excepción de Marcom Group*", a tenor con la Regla 4.3(b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.3(b). El caso prosiguió contra Marcom.

Posteriormente, en mayo de 2002, Marcom solicitó la desestimación de la demanda en su contra, alegando que la demanda no exponía hechos que justificaran la concesión de un remedio en su contra. En su moción, Marcom alegó que el contrato para la producción del Programa "*Super Show*" había sido otorgado entre Raycom y MTVE y que esta última era una corporación distinta y separada a Marcom.

La moción de Marcom estaba respaldada por varios documentos, incluyendo los certificados de incorporación de MTVE y Marcom que reflejaban que las corporaciones habían sido incorporadas el 17 de noviembre de 1997 y el 13 de abril de 2000, respectivamente. Marcom también presentó una enmienda, fechada al 1ro de mayo de 2002, al contrato de servicios entre MTVE y Teleonce para la producción del programa "*Super Show*". Dicho documento mencionaba que MTVE y Teleonce habían otorgado un contrato previo el 19 de enero de 2000. El documento no mencionaba que Marcom hubiera sido parte en el negocio. Marcom no presentó copia del contrato original entre las partes.

Los recurridos solicitaron que se les permitiera conducir descubrimiento de prueba para poderse oponer a la

moción de Marcom.

El 18 de noviembre de 2002, los recurridos enviaron un interrogatorio a Marcom. Luego de solicitar varias prórrogas, Marcom envió una contestación a dicho interrogatorio el 24 de febrero de 2003, la que fue objetada por los recurridos por resultar incompleta. El 27 de marzo de 2003, el Tribunal ordenó a Marcom contestar lo solicitado en 10 días.

No obstante dicha orden, Marcom volvió a presentar varias solicitudes de prórroga, así como a ofrecer contestaciones evasivas y producciones parciales de documentos. Lo anterior requirió que los recurridos presentaran varios escritos objetando la información producida.

El 17 de octubre de 2003, casi un año después del interrogatorio enviado por los recurridos, Marcom finalmente produjo copia del contrato original para la producción del "*Super Show*" suscrito entre el Canal 11 y MTVE el 19 de enero de 1999. En dicho contrato se indicaba que MTVE hacía negocios como Marcom ("*MTVE, a Puerto Rican Corporation, doing business as Marcom Group...*").

A base de dicha documentación, los recurridos se opusieron a la moción de desestimación de Marcom.

El 20 de noviembre de 2003, mediante la resolución recurrida, el Tribunal de Primera Instancia denegó la moción de desestimación de Marcom.

En su resolución, el Tribunal de Primera Instancia concluyó que, conforme a la nueva documentación sometida, existía identidad de partes entre MTVE y Marcom. El Tribunal estimó, más aún, que debía entenderse que, contrario a su dictamen anterior, el Tribunal sí había adquirido jurisdicción sobre MTVE. El Tribunal expresó:

*"Al ser Marcom Group el nombre mediante el cual MTVE, Inc. hace negocios, resolvemos que conforme a la Regla 15.3 de Procedimiento Civil, la demanda y emplazamiento efectuado por la parte demandante a nombre de Marcom Group fue suficiente para traer tanto a MTVE, Inc., como a Marcom Group para responder por los hechos que se alegan en la demanda. Toda alegación responsiva y comparecencia hecha en este caso por Marcom Group, debemos entender que ha sido hecha también por MTVE, Inc."*

El Tribunal también concluyó que Marcom Group había actuado de mala fe al ocultar la verdadera naturaleza de la relación entre las partes, e indicó:

*"La parte demandada Marcom Group, conocía perfectamente desde el comienzo de este pleito la relación existente entre ella y MTVE, Inc., así como que hacía negocios como Marcom Group; negocios entre los que se encuentra la producción del programa 'Super Show'. Su conducta en negar este hecho resulta inexplicable e injustificable para el Tribunal. Sin lugar a dudas, la parte demandada intentó ocultar deliberadamente la relación existente entre MTVE, Inc. con Marcom Group."*

El Tribunal denegó la moción de desestimación de Marcom. El Tribunal estimó, *"como un hecho probado"* que para la fecha de los hechos alegados en la demanda, MTVE *"haciendo negocios como Marcom Group"* era la entidad a cargo de la producción del programa "*Super Show*".

El Tribunal concluyó que el emplazamiento diligenciado a nombre de Marcom Group había sido suficiente para adquirir jurisdicción sobre MTVE, concediendo a esta última un término de 20 días para contestar la demanda.

El Tribunal impuso a Marcom Group una sanción interlocutoria de $2,000.00 por concepto de honorarios

de abogado, *"ante la conducta temeraria y de mala fe exhibida en el descubrimiento de prueba negando y tratando de ocultar mediante evasivas que Marcom Group es el nombre bajo el cual hace negocios MTVE, Inc., incluyendo la producción del programa 'Super Show'"*.

Marcomo solicitó reconsideración de la resolución del Tribunal, la que fue denegada por éste.

Insatisfecha, Marcom acudió entonces ante este foro.

## II

En su recurso, Marcom plantea que el Tribunal de Primera Instancia erró al denegar su moción de desestimación y al determinar que para la fecha de los hechos MTVE era la entidad a cargo de la producción del programa *"Super Show"*, *"haciendo negocios como Marcom Group,"*. Marcom también se queja de que el Tribunal erró al concluir que había adquirido jurisdicción sobre MTVE a través de su emplazamiento sobre Marcom, ordenándole contestar la demanda, a pesar de que la demanda contra dicha parte había sido previamente desestimada y al imponer a Marcom una condena interlocutoria de $2,000.00 por concepto de honorarios de abogado.

No estimamos que el Tribunal de Primera Instancia hubiera errado al negarse a desestimar la demanda contra Marcom.

Según hemos visto, Marcom solicitó la desestimación de la demanda, alegando que la demanda no exponía hechos suficientes para justificar la concesión de un remedio en su contra. *Luán Invest. v. Rexach Const. Co.,* 152 D.P.R. ___ (2000), **2000 J.T.S. 196**, a la pág. 552; *Torres Capeles v. Rivera Alejandro*, 143 D.P.R. 300, 309 (1997); 32 L.P.R.A. Ap. III, R. 10.2.

El Tribunal Supremo de Puerto Rico ha advertido que este tipo de moción sólo procede cuando de un examen de las alegaciones se desprenda que la parte demandante no tendría derecho a remedio alguno bajo cualesquiera hechos que puedan ser probados y cuando la demanda no puede ser, de otro modo, enmendada para subsanar cualquier deficiencia en las alegaciones. *Rivera v. Jaume,* 157 D.P.R. ___ (2002), **2002 J.T.S. 107**, a la pág. 1,525; *Roldán v. Lutrón, S.M., Inc.,* 151 D.P.R. ___ (2000), **2000 J.T.S. 133**, a la pág. 27; *Dorante v. Wrangler of P.R.,* 145 D.P.R. 408, 414 (1998); *Agosto v. Mun. de Río Grande*, 143 D.P.R. 174, 178 (1997); *Pressure Vessels de P.R. v. Empire Gas P.R.,* 137 D.P.R. 497, 505 (1994); *Granados v. Rodríguez Estrada I*, 124 D.P.R. 1, 48 (1989); *Clemente v. Depto. de la Vivienda*, 114 D.P.R. 763, 771 (1983).

Al adjudicar una moción de desestimación, el juzgador viene obligado a dar por ciertas todas las alegaciones bien hechas de la demanda e interpretarlas de la forma más favorable a la parte demandante. *Roldán v. Lutrón, S.M., Inc.,* **2000 J.T.S. 133**, a la pág. 27; *Harguindey Ferrer v. U.I.,* 148 D.P.R. 13, 30 (1999); *Dorante v. Wrangler of P.R.,* 145 D.P.R. a las págs. 413-414.

El fundamento para esta postura, según ha aclarado el Tribunal Supremo de Puerto Rico, es que, bajo nuestro ordenamiento, el demandante no viene obligado a realizar alegaciones minuciosas y técnicamente perfectas, sino que se le permite limitarse a bosquejar a grandes rasgos su reclamación, mediante una exposición sucinta y sencilla de los hechos. *Tenorio y Otros v. Hosp. Dr. Pila*, 159 D.P.R. ___ (2003), **2003 J.T.S. 113**, a la pág. 1,189; *León v. Rest. El Tropical,* 154 D.P.R. ___ (2001), **2001 J.T.S. 84**, a la pág. 1,328; *Sánchez v. Aut. de los Puertos,* 153 D.P.R. ___ (2001), **2001 J.T.S. 34**, a la pág. 967; *Dorante v. Wrangler of P. R.,* 145 D.P.R. a la pág. 413; *Agosto v. Mun. de Río Grande*, 143 D.P.R. a la pág. 178.

Cuando, como en el caso de autos, una moción de desestimación incorpora materias no contenidas en las alegaciones, la misma debe ser considerada como una moción de sentencia sumaria. *Sánchez v. Aut. de los Puertos,* **2001 J.T.S. 34**, a la pág. 967; *Luán Invest. v. Rexach Const. Co.,* **2000 J.T.S. 196**, a la pág. 552;

*Torres Capeles v. Rivera Alejandro*, 143 D.P.R. a la pág. 309; véase, además, 32 L.P.R.A. Ap. III, R. 10.2.

Nuestro ordenamiento, según se conoce, autoriza al Tribunal de Primera Instancia a dictar sentencia sumaria cuando "*no existe controversia real sustancial en cuanto a ningún hecho material y ... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente [de la moción].*" Véase, 32 L.P.R. A. Ap. III, R. 36.3; *P.A.C. v. E.L.A. I*, 150 D.P.R. 359, 374 (2000); *Piñero v. A.A.A.*, 146 D.P.R. 890, 904 (1998); *Soc. de Gananciales v. Vélez & Asoc.*, 145 D.P.R. 508, 526 (1998); *Soto v. Rivera*, 144 D.P.R. 500, 518 (1997); *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 720 (1986).

El propósito principal de este mecanismo es propiciar la resolución justa, rápida y económica de litigios que no presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. *P.A.C. v. E.L.A. I*, 150 D.P.R. a la pág. 374; *López v. J. Gus Lallande*, 144 D.P.R. 774, 783 (1998); *Neca Mortg. Corp. v. A&W Dev. S.E.*, 137 D.P.R. 860, 869 (1995).

El Tribunal Supremo de Puerto Rico ha aclarado, sin embargo, que la sentencia sumaria sólo procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaria. *Rivera v. Dpto. de Hacienda*, 149 D.P.R. 141, 154-155 (1999); *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785, 802.

Si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaria. Véanse, *S.L.G. v. S.L.G.*, 150 D.P.R. 171, 193 (2000); *Rivera v. Depto. de Hacienda*, 149 D.P.R. a la pág. 158; *Bonilla Medina v. P.N.P.*, 140 D.P.R. 294, 304 (1996); *Rivera et al. v. Superior Pkg., Inc., et al.*, 132 D.P.R. 115, 133 (1992).

La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881, 914 (1994).

Al hacer su evaluación, el Tribunal puede considerar la totalidad de las alegaciones y documentos que obren en el récord, los cuales se toman de la manera más favorable a la parte promovida. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913; *Corp. Presiding Bishop of LDS v. Purcell*, 117 D.P.R. a las págs. 721-723; *Flores v. Municipio de Caguas*, 114 D.P.R. 521, 525 (1983); *Padín v. Rossi*, 100 D.P.R. 259, 263-264 (1971).

El peso para demostrar que no existe controversia real sustancial sobre los hechos materiales recae sobre la parte que solicita la sentencia sumaria. *Soto v. Rivera*, 144 D.P.R. 500, 518 (1997); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624, 632 (1994). El sólo hecho de no presentar evidencia que contravierta la presentada por la parte promovente, no implica que necesariamente proceda la sentencia sumaria. *Jusino et al. v. Walgreens*, 155 D.P.R. ___ (2001), **2001 J.T.S. 154**, a la pág. 373; *PFZ Props, Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913.

Tiene que haber quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas. *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 D.P.R. ___ (2002), **2002 J.T.S. 4**, a la pág. 583; *García Rivera, et al. v. Enríquez*, 153 D.P.R. ___ (2001), **2001 J.T.S. 15**, a la pág. 820.

La moción debe ser evaluada de la forma más favorable a la parte que se opone a la solicitud de sentencia sumaria y toda inferencia que se haga a base de los hechos y documentos presentados, debe ser interpretada de manera favorable a dicha parte. *Mgmt. Adm. Serv. Corp. v. E.L.A.*, 152 D.P.R. ___ (2000), **2000 J.T.S. 189**, a las págs. 440-441.

Al evaluar una moción de sentencia sumaria, el Tribunal no debe entrar en la credibilidad de los testigos. *Rosario v. Nationwide Mutual*, 158 D.P.R. ___ (2003), **2003 J.T.S. 34**, a la pág. 644 n. 11; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913.

Al dictar una sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquéllos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no debe dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material; o (4) como cuestión de derecho no procede. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. a la pág. 913.

En el presente caso, Marcom plantea que los documentos sometidos por dicha parte reflejan que MTVE y Marcom son dos corporaciones distintas, y que la encargada de la producción del programa *"Super Show"* era MTVE, por lo que no cabe atribuirle responsabilidad a Marcom por los daños reclamados en la demanda.

El contrato original suscrito por el Canal 11 y MTVE el 19 de enero de 2000, sin embargo, indica expresamente que MTVE suscribió dicho contrato *"haciendo negocios como Marcom Group"* (*"doing business as Marcom Group"*). Dicho contrato aparentemente era el que estaba vigente a la fecha de los hechos del caso, que fueron anteriores a la enmienda del negocio suscrita el 1ro de mayo de 2002.

Existe de este modo, cuando menos, controversia real sustancial en torno a si Marcom y MTVE realmente eran una misma entidad, para fines de la producción del Programa *"Super Show"*. No erró, por lo tanto, el Tribunal de Primera Instancia al negarse a adjudicar el caso por la vía sumaria. *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. a las págs. 727-728.

Marcom se queja, en este sentido, de que el Tribunal determinara que Marcom y MTVE eran una misma entidad, a pesar de que Marcom presentó evidencia de que se trataba de dos corporaciones distintas. La determinación del Tribunal, en este sentido, está razonablemente sostenida por el contrato suscrito entre el Canal 11 y MTVE el 19 de enero de 1999, en el que se refleja que MTVE hacía negocios a través de Marcom Group. Este documento, según indicado, no fue producido por Marcom de primera intención, a pesar de los múltiples requerimientos de la parte recurrida. El mismo estaba vigente a la fecha de los hechos.

En cualquier caso, la determinación del Tribunal de Primera Instancia constituye meramente una disposición interlocutoria que puede ser variada por dicho foro a través de otra evidencia que se le presente oportunamente. Véase, la Regla 43.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.5; *Torres Cruz v. Municipio de San Juan*, 103 D.P.R. 217, 222 (1975).

Marcom alega que el Tribunal de Primera Instancia erró al concluir que MTVE había quedado emplazada a través de Marcom. Cuestiona que se hubiera ordenado a MTVE contestar la demanda, a pesar de que el Tribunal había previamente dictado sentencia parcial desestimando la misma en cuanto a *"todas las partes con excepción de Marcom Group"*. Marcom alega que dicho dictamen había advenido final y firme, por lo que el Tribunal carecía de jurisdicción para reabrir la controversia en cuanto a MTVE.

Lo cierto es que existe controversia sobre si Marcom y MTVE son una misma parte. Si, como entendió el Tribunal de Primera Instancia, el contrato suscrito entre el Canal 11 y MTVE el 19 de enero de 1999 tiende a sugerir que MTVE simplemente hacía negocios como Marcom Group, entonces la sustitución de dichas partes constituye una materia de forma, susceptible de ser corregida en cualquier momento. Véase, *León v. Rest. El Tropical*, **2001 J.T.S. 84**, a la pág. 1,328; *Security Ins. v. Tribunal*, 101 D.P.R. 191, 2002 (1973); *Colón Gandía*

*v. Tribunal Superior*, 93 D.P.R. 225, 231 (1966); *Sociedad de Gananciales v. Tribl. Superior*, 85 D.P.R. 892 (1962); véase, además, la Regla 49.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 49.1.

Habiendo sido emplazada oportunamente Marcom, dicho emplazamiento sería efectivo para adquirir jurisdicción sobre MTVE. Véase, la Regla 15.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 15.3 (*"[c]uando dos o más personas operen un negocio bajo un nombre común, comprenda éste o no los nombres de dichas personas, éstas podrán ser demandadas bajo el referido nombre común, siendo suficiente emplazar a una de ellas"*).

Cuando MTVE finalmente comparezca al litigio, podrá levantar cualquier planteamiento que estime conveniente en torno a la jurisdicción del Tribunal sobre su persona, lo que podrá ser adjudicado por el Tribunal de Primera Instancia, según dicho foro entienda procedente. Véase, *Peguero y Otros v. Hernández Pellot*, 139 D.P.R. 487, 505 n. 15 (1995); *Molina v. Supermercados Amigo, Inc.*, 119 D.P.R. 330, 340-341 (1987).

Marcom alega, finalmente, que el Tribunal erró al imponerle una sanción interlocutoria de $2,000.00 por haber actuado de mala fe y de forma temeraria al ocultar su verdadera relación con MTVE.

El Tribunal de Primera Instancia, según se conoce, goza de amplia discreción para imponer sanciones a las partes por conducta procesal de las partes. *Castro v. Metropolitan Hospital*, 118 D.P.R. 142, 147 (1986); *Hartman v. Tribunal Superior*, 98 D.P.R. 124, 136-137 (1969); *Díaz v. Marshak Auto Dist., Inc.*, 95 D.P.R. 690, 698-699 (1968); *Román Montalvo v. Delgado Herrera*, 89 D.P.R. 428, 440-441 (1963); *Reyes v. Mayagüez Transport*, 86 D.P.R. 273, 278 (1962).

La Regla 44.2 de las de Procedimiento Civil, en este sentido, autoriza al Tribunal a imponer costas interlocutorias a las partes y sanciones económicas *"en todo caso y en cualquier etapa"* a una parte y a favor del Estado por conducta constitutiva de *"demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia"*. 32 L.P.R.A Ap. III, R. 44.2; Véanse, *Pérez Pascual v. Vega Rodríguez*, 124 D.P.R. 529, 539 (1989); véase *Imp. Vilca, Inc. v. Hogares Crea, Inc.*, 118 D.P.R. 679, 687-688 (1987); *Lluch v. España Service Sta.*, 117 D.P.R. 729, 748 (1986); véase, además, la Regla 34 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 34.

Al igual que otras medidas procesales dirigidas a castigar la conducta de los litigantes, este tipo de determinaciones no deben ser alteradas, salvo que el Tribunal hubiera actuado arbitrariamente o de forma evidentemente irrazonable. Cf., *Quiñones López v. Manzano Posas*, 141 D.P.R. 139, 181 (1996); *Ramírez v. Club Cala de Palmas*, 123 D.P.R. 339, 349 (1989); *Fernández v. San Juan Cement Co., Inc.*, 118 D.P.R. 713, 717 (1987); *Raluán Corp. v. Feliciano*, 111 D.P.R. 598, 601-602 (1981); véase, además, *Valentín v. Mun. de Añasco*, 145 D.P.R. 887, 895-898 (1998).

En el presente caso, según hemos visto, el Tribunal impuso la sanción en cuestión a Marcom porque entendió que dicha parte había actuado temerariamente al negarse a producir, por casi un año, el contrato original entre Canal 11 y MTVE de 19 de enero de 1999. Según hemos visto, el documento en cuestión resultaba contrario a la posición de Marcom. Dicho documento fue solicitado por los recurridos, quienes se vieron forzados a comparecer al Tribunal mediante múltiples requerimientos, antes de que Marcom finalmente produjera el mismo. El Tribunal de Primera Instancia entendió que la negativa de dicha parte a proveer la información había sido intencional y procedió a imponerle una sanción proporcionada a la falta.

Marcom alega que su omisión de suministrar el documento de manera oportuna no fue intencional, sino que se debió a *"ciertos problemas internos en sus oficinas, los cuales provocaron el extravío de innumerables documentos relacionados con sus negocios"*.

No estamos en posición de sustituir el criterio del Tribunal de Primera Instancia, quien entendió que dicha justificación resultaba irrazonable. No creemos apropiado intervenir con la discreción del Tribunal de Primera Instancia sobre esta cuestión, ya que dicho foro estaba en mejor posición que este Tribunal para evaluar la explicación ofrecida por Marcom.

Por los fundamentos expresados, se deniega el auto solicitado.

Lo pronunció y lo manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General