*862 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos María Angélica Meléndez Meléndez, en adelante, la apelante, solicitando la revisión de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce. Mediante dicho dictamen, el tribunal a quo declaró Con Lugar una “Moción Solicitando Anotación de Rebeldía y Sentencia Sumaria” presentada por el Banco Popular de Puerto Rico, en adelante, el apelado.
Por las razones que expresamos a continuación, se confirma la Sentencia apelada.
I
Conforme surge del recurso ante nuestra consideración, el apelado interpuso demanda sobre cobro de dinero y ejecución de hipoteca por la vía ordinaria el 1 de julio de 2001. Se alegó en dicho escrito que el apelado era dueño y actual tenedor por endoso de un pagaré a favor de Popular Mortgage, Inc., o a su orden, suscrito por la apelante el 20 de noviembre de 2000. Dicho pagaré es por la suma de $180,000 de principal, devengando intereses a razón de 8 3/8% anual. El primer plazo vencía el 1 de enero de 2001 y los demás plazos en igual día de cada mes subsiguiente hasta el pago total de la deuda, excepto que el balance restante, si no había sido satisfecho antes, vencería el 1 de diciembre de 2015.
Se alegó que mediante la Escritura Núm. 46 suscrita ante la Notario Patricia Lorenzi Juliá, se constituyó hipoteca voluntaria con carácter de primera sobre el siguiente inmueble:
‘‘RUSTICA: Predio de terreno radicado en el Barrio Vacas del término municipal de Villalba, en una cabida de CIENTO DOS CUERDAS (102.00 cdas.), en colindancia por el Norte, con Lucía Lugo y Juan María Ortiz, separados por la cuchilla divisoria de las jurisdicciones de Barros y Villalba; por el Sur, con Manuel Pérez Lucía y Zoilo Santiago; por el Este, con el resto de terrenos de la finca principal de donde se segregó esta porción y Catalina Ramírez; y por el Oeste, con Vicente López, Hipólito Rodríguez, Pedro Rodríguez y Manuel Pérez... ”.
Dicha hipoteca se constituyó para garantizar el pago de la deuda evidenciada por el mencionado pagaré y sus intereses, más las cantidades adicionales para intereses en adición a los garantizados por ley, para costas, gastos y honorarios de abogado en casos de ejecución o reclamación judicial, entre otros extremos.
En la demanda interpuesta se alegó que la apelante no había cumplido con su obligación mensual de abono a principal e intereses acumulados y, a la fecha de presentada la acción, tenía varios meses de atraso. En su consecuencia, el apelado declaró vencida la totalidad de la deuda por lo que alegó que la apelante le adeudaba la cantidad de $179,496.88, balance de principal del pagaré, más los intereses que al tipo convenido del 8 3/8% anual que han devengado sobre dicha suma desde el 1 de enero de 2001 y los que se devenguen hasta su total y completo pago de la deuda, entre otros.
Emplazada por edictos, y ante la incomparecencia de la apelante, el 25 de febrero de 2002, el apelado presentó una “Moción Solicitando Anotación de Rebeldía”. A su vez, en igual fecha, el apelado presentó una “Moción Solicitando se Dicte Sentencia Sumaria”. Dicho escrito fue acompañado con una declaración jurada suscrita por un Oficial del apelado.
El 7 de marzo de 2002, la apelante compareció pro se al Tribunal de Primera Instancia y le informó a dicho foro de su situación de salud así como el hecho de que se había enterado el 6 de marzo de 2002, mediante comunicación telefónica con un Oficial del apelado, que había sido emplazada por edicto. Le solicitó al tribunal a quo se le diera la oportunidad de contratar representación legal.
Así las cosas, y luego de varios trámites procesales, el Tribunal de Primera Instancia emitió una Orden *863 señalando una vista transaccional para el 7 de mayo de 2002. Llegada dicha fecha, la representación legal del apelado le notificó al foro de instancia que la apelante le había notificado que había llegado a un acuerdo con el apelado. La representante legal le señaló al tribunal a quo que desconocía de dicho acuerdo, toda vez que no se le había notificado y que tenía que mediar una estipulación.
Luego de otros trámites procesales, el 18 de junio de 2002, el Tribunal de Primera Instancia le ordenó a la apelante contestara la demanda. A su vez, el 20 de junio de 2002, el apelado presentó una “Moción Solicitando Anotación de Rebeldía y Sentencia Sumaria”. Surge de dicho escrito un recuento procesal del caso de marras.
Ante la situación procesal descrita, el apelado le solicitó al Tribunal de Primera Instancia se le anotara la rebeldía a la apelante y se dictara sentencia sumaria.
El 27 de junio de 2002, la apelante presentó, alegación responsiva, En la misma, entre otros extremos, la apelante admitió que, durante varios meses por razón de estar enferma, se había visto imposibilitada de realizar los pagos mensuales del préstamo. Sin embargo, la apelante alegó que posterior a la presentación de la demanda, había llegado a un acuerdo con el apelado sobre el pago de los atrasos que existían en el préstamo. Posteriormente, la apelante, mediante “Moción Informativa y en Cumplimiento de Orden” argumentó que al amparo del acuerdo entre las partes, la deuda había sido novada, por lo que la obligación que se reclamaba era legalmente inexistente. A su vez, el 2 de julio de 2002, la apelante presentó su “Moción en Oposición a Moción Solicitando Anotación de Rebeldía y Sentencia Sumaria”. En el extenso escrito alegó, nuevamente, entre otros extremos, que la deuda había sido novada. Se expresó que “...había ocurrido una novación que había extinguido la obligación original, en vista de que las partes habían llegado a un acuerdo de pago de la deuda. Dicho acuerdo se materializó durante la reunión que se llevó a cabo con el señor Colón, Oficial de Servicios Hipotecarios del Banco, el 6 de mayo de 2002, acuerdo que la demandada informó a este Honorable Tribunal durante la vista transaccional del 7 de mayo de 202, así como mediante la radicación de su- “Moción Informativa...”. En consecuencia, la apelante planteó que existía una controversia de hechos en cuanto a la existencia de la alegada deuda, o si ésta había sido novada y sustituida por una nueva, y en cuanto a la suma de-dinéro adeudada.
De dicho escrito, el apelado presentó réplica. Argumentó que la apelante no había sometido evidencia documental que estableciera el consentimiento del apelado a un acuerdo entre las partes a fin de que se diera una novación.
El 25 de septiembre de 2002, se celebró una vista en el caso de autos. Del Acta se desprende:

“La parte demandante informa que está pendiente de resolverse una solicitud de sentencia sumaria que fue radicada por el Banco Popular hace un tiempo atrás. No había sido resuelta, toda vez que se había solicitado la anotación de rebeldía contra la parte demandada. Luego, la parte demandada compareció asistida de abogado y se concedió un término para contestar la demanda. Argumenta la licenciada que este caso lleva 17 meses de radicado y la parte demandada no ha hecho un sólo pago de esa deuda, la cual asciende a $46,633.42 al día de hoy. Se le notificó y la parte demandada no acepta transacciones, por lo que no habiendo efectuado ningún pago que se procede a declarar CON LUGAR la demanda.

La parte demandada indica que del récord se desprende la razón del porqué la demandada no había hecho pagos a este préstamo y le informa ella al Banco mediante cartas, todos los problemas por las que estaba pasando debido a una enfermedad catastrófica. Finalmente, desde el año 2001, sin conocer qúe éste caso estaba en el Tribunal, ella comienza a comunicarse con el Banco y el Banco no le dijo que este caso estaba radicado. Luego tuvo que salir para Estados Unidos a recibir tratamiento y al regreso le hizo una oferta al Banco para hacer un plan de pago. Le entregó al Banco $1,785.51 el 5 de mayo de 2002 y dos giros por $1,785.51. Cuando sale del Banco, la demandada entiende que tiene un plan de pago.

*864
Posteriormente, el Banco le devuelve los últimos giros que habían sido entregados y quiso resolver este asunto extrajudicialmente.

Lo único que separa al Banco y la demandada sobre una transacción es que se acepte el plan de pago y se desista de la demanda. Está en el expediente la contestación a la demanda y a la oposición a la sentencia sumaria.

[[Image here]]
El 1 de octubre de 2002, notificada el 7 de octubre de 2002, el Tribunal .de Primera Instancia emitió Sentencia. En su consecuencia, condenó a la apelante a pagar al apelado la suma de $179,498.88, balance de principal del pagaré relacionado en la demanda, más los intereses que al tipo convenido del 8 3/8% anual se han devengado sobre dicha cantidad hasta el 1 de septiembre de 2002 ascendentes a $24,353.97, más los devengados hasta esa fecha y los que se devenguen hasta el total y completo pago de la deuda y la suma de $1,847.37 por concepto de cargos por demora devengados hasta el 1 de septiembre de 2002, más los cargos por demora devengados hasta esa fecha y los que se devenguen hasta el total y completo pago de la deuda. Asimismo, condenó a la apelante satisfacer la cantidad de $18,000 para costas, gastos y honorarios de abogado pactados en el pagaré. De no efectuarse el pago de las sumas indicadas, se dictaminó que el inmueble fuera vendido en pública subasta.
Insatisfecha con dicha determinación, la apelante presentó reconsideración, la cual no fue considerada.
Inconforme, la apelante acudió a este Tribunal. Contando con el beneficio de la comparecencia del apelado, procedemos a resolver.
II
En su escrito, la apelante señala que incidió el Tribunal de Primera Instancia al dictar sentencia sumaria cuando existían claras controversias reales sustanciales en cuanto al monto de la deuda y en cuanto a una novación modificativa de los términos y condiciones del pago de la deuda de la hipoteca.
III
La controversia ante nuestra consideración se enmarca dentro del contexto de una solicitud de sentencia sumaria. La Regla 36.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. DI, R. 36.2, le permite a una parte presentar una moción basada o no en declaraciones juradas, para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de una reclamación. P.A.C. v. E.L.A., 150 D.P.R. _ (2000), 2000 J.T.S. 33; Piñero v. A.A.A., 146 D.P.R. 890 (1998); Soc. de Gananciales v. Vélez & Asoc., 145 D.P.R. 508 (1998); Soto v. Caribe Hilton, 137 D.P.R. 294, 300 (1994).
La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. HI, R. 36.3, autoriza al tribunal a dictar sentencia sumaria cuando “no existe controversia real sustancial en cuanto a ningún hecho material y... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente”. Véase, además, P.A.C. v. E.L.A., supra; Soto v. Rivera, 144 D.P.R. 500 (1997); Rodríguez v. Srio. de Hacienda, 135 D.P.R. 219, 222 (1994); Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).
El mecanismo procesal de sentencia sumaria debe utilizarse cuando el “promovente ha establecido su derecho con claridad y ha quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no han sido refutadas.” García Rivera v. Enríquez Marín, _ D.P.R. _ (2001), 2001 J.T.S. 15.
*865 La determinación de disponer de un pleito mediante este mecanismo es una que está confiada a la discreción del foro de primera instancia. PFZ Pros., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881, 914 (1994). La parte que solicita la sentencia sumaria tiene que demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que procede se dicte sentencia a su favor como cuestión de ley. La parte opositora se ve entonces en posición de poner en controversia los hechos presentados por el promovente. Soto v. Rivera, supra, a las págs. 398-369; Pilot Life Ins. Co. v. Crespo Martínez, supra, a la pág. 632.
Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquéllos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no deberá dictar sentencia sumaria cuando: (1) existan hechos materiales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material, o (4) como cuestión de derecho no procede. Id., a las págs. 913-914.
IY
Conforme las disposiciones del Art. 1110 del Código Civil, 31 L.P.R.A. see, 3151, las obligaciones se extinguen:

“1. Por el pago o cumplimiento.

2. Por la pérdida de la cosa debida.

3. Por la condonación de la deuda.

4. Por la confusión de los dérechos de acreedor y deudor.

5. Por la compensación.

6. Por la novación. ”

La novación se define como “la sustitución o cambio de una obligación por otra posterior, que modifica o extingue la primera, ya variando su objeto o condiciones principales, o bien sustituyendo la persona del deudor, o subrogando a un tercero en los derechos del acreedor”. VIIIJ. Manresa y Navarro, Comentarios al Código Civil Español, págs. 855-856 (1967).
De lo anterior se colige que en nuestro ordenamiento jurídico convergen dos (2) modalidades de la novación, la novación extintiva y la modificativa.
Conforme hemos reseñado, la novación no es siempre extintiva. Puede ser meramente modificativa de una obligación anterior que queda subsistente. Como apunta Sancho Rebullida “cuando la voluntad no se manifiesta expresamente referida a la extinción y no hay incompatibilidad entre las dos obligaciones, debe entenderse que las partes han querido modificar simplemente la obligación y que ésta por tanto, modificada, subsiste.'” La Novación de las Obligaciones, Ediciones Nauta, S.A. Barcelona, 1964, pág. 204. Conforme lo anterior, la novación meramente modificativa permite la coexistencia de dos obligaciones sucesivamente contraídas. Aunque ello es una cuestión de intención, la misma “debe inferirse de las circunstancias que rodean cada caso en particular”. Véase, Warner Lambert Co. v. Tribunal Superior, supra; Constructora Bauzá v. García López, 129 D.P.R. 579, 599 (1992).
*866 La novación modificativa implica persistencia de la obligación originaria, con variación de alguno de sus elementos. Id. Persistencia de la misma obligación significa que conservará la preferencia que tenía por razón de su fecha, que conservará los derechos accesorios de garantía, entre otros.
Asimismo, se ha señalado:

“Véase lo que sucede, por ejemplo, con la alteración del plazo de vencimiento de la obligación. Muchas sentencias declaran que la prórroga del plazo inicialmente señalado no implica novación extintiva.

La sentencia de 26 de abril de 1955 (Aranzadi, núm. 1.533), recaída en un caso en que se había aceptado que el pago de la deuda reconocida se haría mediante letras de cambio escalonadas en su vencimiento y de importe gradual, declaró que no existía novación porque, «según jurisprudencia (sentencias de 9 de mayo de 1934 y 30 de diciembre de 1935, entre otras) no existe novación cuando subsistiendo la obligación primitiva se otorgan simples facilidades para el cumplimiento de la obligación mediante prórrogas o pagos fraccionados...

La sentencia de 22 de junio de 1917...y a había aclarado que «no hay novación por el sólo hecho de que el acreedor conceda prórroga de plazo al deudor y cuando no consta el propósito de los otorgantes de tener por extinguida la obligación anterior por otra nueva. »

En el mismo sentido, la sentencia de 22 de junio de 1917... declaró que las diversas prórrogas concedidas no crearon convenciones que sustituyeran a la primera, limitándose a aplazamientos de pago y reducción del crédito, por entregas parciales, pero dejando subsistente y sin restricción en parte alguna lo pactado.... ”.

José Puig Brutau, Fundamentos de Derecho Civil, supra, págs. 397 y 398.
El Tribunal Supremo de Puerto Rico ha establecido las siguientes pautas interpretativas con relación a la figura que discutimos: (1) la novación nunca se presume y ha de ser acreditada sin género alguno de duda; (2) que la novación es siempre cuestión de intención y que ésta debe inferirse de las circunstancias que rodean cada caso en particular; (3) que la doctrina puntualiza el elemento de la voluntad de las partes como determinante de la novación; y (4) que por la extinción de las obligaciones conlleva la extinción de las garantías y demás derechos accesorios. Resulta evidente que una consecuencia tan drástica como ésta sólo puede producirse cuando las partes han tenido clara conciencia de ello. Constructora Bauzá Inc., v. García López, supra, citando a Warner Lambert Co. v. Tribunal Superior, supra.
y
En su escrito, la apelante nos plantea que, conforme lo establecido por nuestro ordenamiento jurídico, la determinación de si una obligación fue novada es una que debe hacerse caso a caso y de acuerdo a las circunstancias que rodean la misma. Argumenta que incidió el Tribunal de Primera Instancia al haber dispuesto sumariamente del caso, toda vez que hay en el mismo aspectos de credibilidad que debieron dilucidarse en una vista.
Por su parte, el apelado señala que surge claro que no hubo consentimiento de su parte para el acuerdo que indica la apelante. A tales efectos, cita del Acta del 25 de septiembre de 2002 cuando el representante legal de la apelante le indicó al tribunal a quo: “[l]o único que separa al Banco [el apelado] y la demandada [la apelante] sobre una transacción es que se acepte el plan de pago y se desista de la demanda ”.
Evaluados los escritos y documentación que obra en autos, somos de opinión que no hubo una novación en el caso de marras. En particular, los hechos del caso de autos no satisfacen el rigor del consentimiento exigido para una novación. Sobre lo anterior, surge de autos una carta de 15 de mayo de 2002 dirigida a la apelante. En la misma, la cual está suscrita por José F. Colón, un Oficial del apelado, se le señala a la apelante lo siguiente:
*867 [[Image here]]

Confirmamos lo discutido en nuestra reunión de hoy. A continuación detallamos el total de la deuda de su préstamo hipotecario:

16 mensualidades @ $1,785.51 c/u $28,568.16

Cargos por demora 1,407.52

Inspecciones 120.00

Gastos y honorarios de abogado 1,100.00

Total $31,195.68

El 25 de febrero de 2002 usted envió una carta mediante la cual remitió $1,785.51 y solicitó se le considerara un plan de pago basado en el pago mensual que le corresponde y $5,000.00 adicionales comenzando el [sic] abril de 2002 para abono a la deuda, intereses, recargos y honorarios de abogado. Durante el mes de abril no recibimos la cantidad a la cual se comprometió incumpliendo el plan que solicitó. El 6 de mayo de 2002 nos entregó personalmente otra misiva incluyendo la suma de $1,785.51, nuevamente en incumplimiento de lo solicitado en su carta de febrero.

En nuestra reunión del día de hoy no pudimos llegar a ningún acuerdo. A continuación le detallamos un posible plan el cual estaríamos dispuestos a analizar y considerar, siempre y cuando usted someta la información que le requerimos para hacer un análisis más completo....

Agradeceré se comunique conmigo dentro de los próximos cinco (5) días para indicarnos si está de acuerdo con los detalles de este plan... ”.

El 18 de agosto de 2002, y ante una comunicación del apelado a efectos de que no había contestado la misiva arriba transcrita, la apelante señaló:
[[Image here]]

Leyendo su misiva puedo interpretar que a usted no le pusieron al tanto sobre el Plan de Pago acordado el 6 de mayo de 2002, día que solicité una reunión con su persona precisamente para discutir el Plan de Pago sometido por esta servidora el 25 de febrero de 2002 y para el cual el día 6 de mayo de 2002 no había tenido contestación del banco... ”.

Resulta claro que el apelado y la apelante no habían llegado a ningún acuerdo sobre los pagos atrasados. Más aún, se desprende de las comunicaciones que el acuerdo al que la apelante se refería era la oferta sometida por ella. Surge de los documentos que obran en el expediente que la apelante realizó una serie de visitas, a las oficinas del apelado, así como remitió varias comunicaciones. En todas, informaba que estaba dispuesta a considerar el plan de pago sometido por ella, el cual no contaba con el consentimiento del apelado. No puede quedar a voluntad del deudor el método de pago a ser acordado y pretender después plantear que hubo una novación sin el consentimiento del acreedor.
En relación a la cantidad adeudada surge del expediente que los pagos adicionales efectuados por la apelante, a saber, dos (2) giros que totalizaban $1,785.51 no les fueron aceptados siendo devueltos los mismos. En su consecuencia, se acreditó un sólo pago de $1,785.51, el cual redujo el balance de $180,000.00 a *868 $179,496.88.
En cualquier caso, aun de haber existido el acuerdo reclamado, el mismo no tendría el efecto que plantea la apelante. Cabe señalar, en este sentido, que las obligaciones pueden modificarse variando su objeto o condiciones principales (novación modificativa). Sobre este último, se ha esbozado:

“En cuanto al plazo, la doctrina científica suele entender que la concesión de un término al deudor o la renuncia por el deudor del que inicialmente se le había otorgado, no implica, en principio, novación, pues el término, dice Planiol, sólo afecta a la ejecución de la hipoteca, no a su constitución. Nuestra jurisprudencia, aceptando esta doctrina, ha declarado que la simple alteración o prórroga del palzo no constituye novación... ”.

Castán Tobeñas, Derecho Civil Español, Común y Floral, supra, a las págs. 442-443.
Conforme los trataditas, no existe novación cuando subsistiendo la obligación primitiva se otorgan simples facilidades para el cumplimiento de la obligación mediante prórrogas o pagos fraccionados.
El acuerdo que menciona la apelante, de haberse suscrito, meramente proveía para el pago de los plazos vencidos, o sea, pretendía introducir una alternativa de pago de las mensualidades atrasadas. Nótese que no hubo cambio o modificación alguna en las condiciones principales del préstamo, sino meramente facilidades para pagar los plazos atrasados. Dichos pagos se harían en conjunto con la mensualidad correspondiente vencida, no habiendo cambios en la duración de la obligación ni cambio en las mensualidades futuras a ser pagadas.
En conclusión, no existiendo controversia de hechos en el caso de autos, procedía, conforme actuó el Tribunal de Primera Instancia, disponer sumariamente del pleito.
VI
Por los fundamentos arriba esbozados, se confirma la Sentencia apelada.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIO 2003 DTA 35
1. El préstamo fue por la cantidad de $180,000.00. La apelante efectuó, en enero de 2001, un pago de $1,785.51 el cual le fue aplicado a dicha obligación de acuerdo con los términos establecidos entre las partes. En su consecuencia, se redujo el principal de $180,000.00 a $179,496.51.