Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ROLANDO G. ABREU RODRÍGUEZ<br><br>Apelado<br><br>v.<br><br>NOCHE DE ESTRELLAS, INC.; JOSÉ MELÉNDEZ FRAGUADA<br><br>Apelantes | KLAN202300827 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Sobre: Ejecución de Hipoteca<br><br>Caso Número: K CD2012-2817 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2024.

Los apelantes, Noche de Estrellas, Inc., y el señor José Meléndez Fraguada, comparecen ante nos y solicitan nuestra intervención para que dejemos sin efecto la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 19 de diciembre de 2022, notificada el 21 de diciembre de 2022. Mediante la misma, el foro primario adoptó en su totalidad el *Informe Final Enmendado* presentado por la *Comisionada Especial*, y dictó sentencia sumaria a favor del apelado, señor Rolando G. Abreu Rodríguez.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I**

El 29 de noviembre de 2012, el apelado presentó la demanda de epígrafe. En esencia, arguyó ser el tenedor de un pagaré hipotecario al portador, por la suma principal de $350,000.00, suscrito el 19 de noviembre de 2007 por los aquí apelantes. Conforme indicó, en igual fecha, y mediante el instrumento público correspondiente, los apelantes garantizaron el cumplimiento de la

Número Identificador

SEN2024 _____

referida obligación constituyendo una hipoteca sobre dos unidades de apartamentos sitos en el Condominio Rocha del municipio de San Juan. ("Inmueble Núm. 1", e "Inmueble Núm. 2"). En este contexto particular, el apelado indicó que, conforme pactado, el Inmueble Núm. 1 respondía por la suma de $225,000.00, y el Inmueble Núm. 2, por la cantidad de $125,000.00, ello con relación a la obligación garantizada. Destacamos que los referidos inmuebles fueron el objeto de un contrato de compraventa suscrito entre los apelantes y la causante del apelado.

En el pliego, el apelado afirmó que, desde el 1 de enero de 2012, los apelantes incumplieron con la obligación de pago correspondiente. Específicamente, sostuvo que la deuda acumulada ascendía a un total de $407,197.99. Así, al amparo de sus alegaciones, solicitó al Tribunal de Primera Instancia que les ordenara satisfacer, de manera solidaria, la acreencia en controversia y, en su defecto, que proveyera para la ejecución de la garantía hipotecaria suscrita.

El 18 de octubre de 2016, la apelante Noche de Estrellas, Inc., presentó *Contestación a Demanda y Reconvención*. En lo pertinente, negó las alegaciones de deuda en su contra al sostener que los negocios jurídicos en litigio eran inválidos. Al respecto, indicó que el pagaré en controversia, el cual admitió haber firmado, debía evidenciar una suma de $300,000.00 por concepto de la obligación pertinente, toda vez que, al momento de pactarse la compraventa de los apartamentos en disputa, así como el financiamiento aplicable, entregó un adelanto de $50,000.00. A tenor con ello, expuso que los documentos notariales acreditativos de las obligaciones entre las partes, quedaron pendientes corrección, toda vez que, conforme afirmó, se acordó descontar del precio total de venta el pronto antes aludido, de modo que la escritura de compraventa, la de hipoteca, y el pagaré hipotecario, reflejaran un principal de $300,000.00. Sobre

dicho particular, indicó que, el 19 de noviembre de 2007, las partes acordaron enmendar el contenido de los instrumentos públicos, a fin de que se ajustara a los términos antes indicados. Sin embargo, sostuvo que ello no se llevó a cabo y que los documentos originales no se suscribieron de conformidad con las exigencias legales.

Por su parte, en cuanto a sus argumentos de reconvención, la apelante Noche de Estrellas, Inc., expuso que las unidades objeto de compraventa presentaban un severo problema de filtraciones que no le fue advertido. Así, solicitó que se impusiera al apelado la obligación de satisfacerle una cantidad de $50,000.00 por concepto de la pérdida de la propiedad, así como una cantidad igual por los daños resultantes. Luego de evaluada la reconvención antes descrita, mediante *Resolución* notificada el 1 de noviembre de 2016, el Tribunal de Primera Instancia no autorizó la misma, bajo el fundamento de que no surgía del acto o evento que motivó la demanda de epígrafe.

Así las cosas, el 25 de agosto de 2017, el apelado presentó *Demanda Enmendada.* En lo pertinente, modificó la cantidad de la deuda reclamada, ello al aducir que la misma ascendía a $522,177.33. En respuesta, la apelante Noche de Estrellas, Inc. presentó su *Contestación Enmendada y Reconvención.* Tras reproducir sus previos argumentos, reiteró haber suscrito el pagaré hipotecario en controversia, mas no así la escritura de hipoteca. Por igual, nuevamente expuso los términos de su reconvención tal cual aducidos en la alegación responsivas original.

Acontecidas ciertas incidencias, el 21 de agosto de 2017, el tribunal celebró una vista. De la *Minuta* correspondiente surge que se estableció la inexistencia de controversia alguna en cuanto a que la entidad compareciente, por conducto de su representante, el apelante Meléndez Fraguada, suscribió el pagaré hipotecario objeto de litigio. No obstante, se hizo constar que este negó reconocer su

firma tanto en la escritura de compraventa como en la de constitución de hipoteca. A su vez, de acuerdo con lo expuesto en la *Minuta,* el representante legal del apelado reconoció que, en efecto, los apelantes efectuaron un pago de $50,000.00 por concepto de adelanto del precio pactado. Ahora bien, el tribunal hizo constar que existía controversia en cuanto a si el antedicho pronto se aplicó a un precio de $400,000.00 o a uno de $350,000.00.

El 24 de abril de 2018, el Tribunal de Primera Instancia emitió una *Resolución* por la cual designó a la licenciada Haydée Pagani Padró como Comisionada Especial a cargo de entender en la disputa entre las partes, ello de conformidad con las disposiciones de la Regla 41 de Procedimiento Civil, 32 LPRA Ap. V, R. 41.

Por su parte, luego de ciertas incidencias procesales, el 31 de agosto de 2018, los aquí apelantes, de manera conjunta, presentaron una *Contestación Enmendada a la Demanda Enmendada.* En síntesis, nuevamente plantearon que nunca se suscribieron, ni la escritura de constitución de hipoteca, ni la de compraventa. Al respecto, una vez más expusieron el argumento relativo a que no se efectuó la corrección en cuanto a la cantidad a financiarse, a saber, $300,000.00, ello en consideración al abono de $50,000.00 al precio de venta alegadamente pactado.

A su vez, en su alegación responsiva, los apelantes reprodujeron sus planteamientos sobre vicios ocultos en las propiedades objeto de negocio entre las partes. Los apelantes acompañaron su pliego con copia de una declaración jurada suscrita por la señora Nancy Arias Gómez. Conforme surge, la señora Arias Gómez dio fe de haber presenciado el acto por el cual los apelantes hicieron entrega del pronto de $50,000.00, así como del momento en el que el representante legal del apelado se obligó a enmendar los documentos acreditativos del negocio en controversia.

En lo concerniente, el 18 de septiembre de 2018, el tribunal primario celebró otra vista en el caso. Del contenido de la *Minuta* correspondiente según suscrita el 2 de octubre de dicho año, se desprende, entre otros asuntos, que los apelantes expresamente renunciaron a la presentación del perito calígrafo previamente anunciado durante el curso de los procedimientos.

En curso los procedimientos del caso, el 7 de noviembre de 2018, se celebró una vista. De la *Minuta* correspondiente, según suscrita el 21 de noviembre de 2018, surge que los aquí apelantes estipularon que dejaron de pagar la deuda objeto de litigio desde el 1 de enero de 2012.

Tras ciertos trámites y concerniente a lo que nos ocupa, el 22 de abril de 2019, los apelantes presentaron a la consideración del tribunal primario un documento intitulado *Moción Informando Indisponibilidad de Testigo Nancy Arias Gómez.* Específicamente, indicaron que, por razones de salud, esta no habría de poder viajar a Puerto Rico para testificar en el caso. Posteriormente, el 14 de enero de 2020, los apelantes, mediante moción a los efectos, notificaron que no habrían de tomarle deposición a la señora Arias Gómez.

El 3 de marzo de 2020, el apelado presentó una *Solicitud de Sentencia Sumaria.* [1] En particular, expuso que el 19 de noviembre de 2007, la apelante Noches de Estrellas, Inc., por conducto de su representante, el apelante Meléndez Fraguada, adquirió de su causante, la señora Helia Rodríguez Roche, los dos apartamentos

---

[1] El apelado acompañó su solicitud con la siguiente prueba documental: Escritura sobre *Compraventa;* cheque emitido a favor de la señora Rodríguez, por la cantidad de $50,000; Escritura de *Constitución de Hipoteca en Garantía de Pagaré; Pagaré Hipotecario; Resolución* del Tribunal de Primera Instancia, Sala de San Juan, por medio de la cual se declara al apelado único y universal heredero de la señora Rodríguez; documento intitulado *Primer Requerimiento de Admisiones*; *Contestaciones a Primer Requerimiento de Admisiones*; documento intitulado *Pliego de Interrogatorios y Producción de Documentos*; *Contestación a Interrogatorio*; Documento intitulado *Segundo Pliego de Requerimiento de Admisiones y Producción de Documentos*; *Contestación Segundo Requerimiento de Admisiones.*

sitos en el Condominio Roche. Contrario a lo aducido por los apelantes, el apelado afirmó que la referida transacción se efectuó por un precio total de $400,00.00 al cual se le restó el adelanto de $50,000.00 que los apelantes entregaron, restando así la suma de $350,000.00 objeto de financiamiento. Añadió que, conforme lo pactado, las partes convinieron que los apelantes amortizarían la referida cantidad a razón de un pago mensual de $2,098.43. De acuerdo con el apelado, el apelante Meléndez Fraguada, en representación de la entidad de epígrafe, otorgó, tanto la escritura de compraventa como la de constitución de hipoteca, ello en garantía del pagaré que, según estipulado, también fue debidamente suscrito. Igualmente, el apelado afirmó que el apelante Meléndez Fraguada expresamente se constituyó en deudor solidario de la obligación en disputa.

En su pliego, el apelado expuso que no existía controversia de hechos en cuanto a los verdaderos términos de la compraventa e hipoteca según lo antes expuesto. A su vez, sostuvo que no había disputa en cuanto a la efectiva firma de los instrumentos públicos pertinentes, ni sobre el pago de un adelanto de $50,000.00, así como, tampoco, sobre el hecho de que, después de dicho depósito, el balance de la deuda a su favor resultó en $350,000.00. Igualmente, el apelado se reafirmó en que eran hechos admitidos y establecidos el que los apelantes tomaron posesión de ambos inmuebles una vez perfeccionada la compraventa, que rentaron los mismos obteniendo ganancias de ello, y que dejaron de pagar la mensualidad correspondiente a la amortización de la deuda. Así, y tras aducir que, al 31 de enero de 2020, la misma ascendía $533,393.05, solicitó al Tribunal de Primera Instancia que dictara sentencia sumaria a su favor y ordenara a los apelantes satisfacer el importe al descubierto.

Más tarde, y luego de acontecidos múltiples trámites procesales, el 13 de agosto de 2020, el apelado nuevamente compareció ante el tribunal competente mediante *Moción Solicitando se Dicte Sentencia y Solicitud de Embargo Preventivo*. En síntesis, argumentó que los apelantes incumplieron con el plazo provisto por el ordenamiento procesal civil para oponerse a su *Solicitud de Sentencia Sumaria*. De este modo, solicitó que, ante ello, se diera por sometida su petición en los términos requeridos o, en su defecto, se emitiera una orden de embargo preventivo en aseguramiento de sentencia sobre las rentas provenientes del arrendamiento de las propiedades en disputa.

Así las cosas, y tras ciertas incidencias, entre ellas, la autorización de una nueva representación legal para los apelantes, el 8 de octubre de 2020, la Comisionada Especial designada al caso emitió una *Orden* y extendió un plazo de diez (10) días a los apelantes para presentar sus argumentos en oposición a la petición del apelado. Posteriormente, el 30 de noviembre de 2020, este presentó una *Moción Urgente al Tribunal* por la cual denunció que, a dicha fecha, los apelantes no habían presentado su escrito en oposición a su moción de sentencia sumaria. Así pues, se reiteró en que procedía declararse con lugar la misma, ello de conformidad con su súplica.

El 1 de diciembre de 2020, la Comisionada Especial emitió una *Resolución*. Mediante la misma, expresó que había transcurrido el plazo de diez (10) días extendido a los apelantes para que presentaran su escrito en oposición a la *Solicitud de Sentencia Sumaria* pendiente de adjudicación. Toda vez ello, declaró *Con Lugar* la demanda de epígrafe, ello, según lo expuesto en el referido pliego. En igual fecha, la Comisionada Especial sometió su *Informe Final*. De conformidad con el mismo, dispuso que era un hecho incontrovertido el efectivo incumplimiento de pago imputado a los

apelantes, así como, también, que la obligación de compraventa en controversia se pactó por un precio total de $400,000.00, monto al que se le descontó el adelanto de $50,000.00 por estos efectuado. Según lo consignado por la Comisionada Especial en el *Informe*, la prueba sometida a su haber estableció que, respecto al sobrante de $350,000.00, los apelantes suscribieron un pagaré hipotecario, que garantizaron mediante la constitución de una hipoteca sobre los inmuebles objeto del negocio jurídico. Sobre ello, la funcionaria expuso que no existía disputa en cuanto a que el apelante Meléndez Fraguada, en representación de la entidad compareciente, suscribió las escrituras correspondientes, estampando sus iniciales en todos los folios y constituyéndose en deudor solidario de la obligación. Al respecto, la Comisionada afirmó haber inspeccionado los referidos instrumentos públicos y haber constatado la efectiva participación del apelante Meléndez Fraguada en los mismos, ello en una vista ocular llevada a cabo en la oficina del notario autorizante en la que las partes estuvieron presentes. A su vez, la Comisionada Especial hizo constar que, según establecido, los apelantes, sin objeción alguna, amortizaron la deuda pendiente mediante el pago mensual de $2,098.43, ello desde el 1 de enero de 2008, al 1 de diciembre de 2011, fecha desde la cual dejaron de cumplir su obligación. De este modo, y tras reiterar que las múltiples gestiones extrajudiciales de cobro del apelado resultaron infructuosas, así como que los apelantes no se acogieron al plan de pago que este les extendió, sostuvo que procedía ordenarse el pago de $522,177.33, ello de manera solidaria, y, en su defecto, que se proveyera para la venta pública de los inmuebles hipotecados.

Ese mismo 1 de diciembre de 2020, los apelantes presentaron un escrito intitulado *Moción en Oposición a Moción Urgente al Tribunal, Solicitud de Notificación de Escritos y/u Órdenes y Solicitud*

*de Prórroga.*[2]   En respuesta, el apelado presentó su escrito de réplica, aludiendo al incumplimiento de los apelantes con las órdenes del tribunal y de la Comisionada Especial. Así, y tras afirmar que las causas expuestas por los apelantes para justificar sus incumplimientos no gozaban de suficiencia, peticionó que se sostuviera la determinación emitida a su favor.

El 30 de diciembre de 2020, los apelantes presentaron su *Moción en Oposición a Solicitud de Sentencia Sumaria de la Parte Demandante.*[3] En esencia, adujeron que no procedía que se dictara sentencia sumaria en su contra, por existir una genuina controversia sobre la validez de la escritura de compraventa de los apartamentos y sobre de constitución de la hipoteca. Al respecto, afirmaron que los instrumentos públicos pertinentes no habían sido debidamente suscritos, hecho que impedía la exigibilidad de obligación alguna.  A su vez, sostuvieron que también había disputa en cuanto al precio de venta pactado por las unidades.  Sobre dicho particular, insistieron en que, contrario a lo aducido por el apelado, ello en cuanto a que la venta se perfeccionó por $400,000.00, el precio total convenido fue de $350,000.00. Siendo tal su alegación, nuevamente afirmaron que, al aplicarse el pronto de $50,000.00, la cantidad objeto de financiamiento era de $300,000.00, suma que debió haberse hecho constar en los documentos acreditativos de la garantía hipotecaria en cuestión.

En el pliego, los apelantes admitieron que, a pesar de que, a su juicio, los documentos relativos al negocio entre las partes consignaban información errónea sobre el precio de venta, suscribieron el pagaré hipotecario. No obstante, se reafirmaron en

---

[2] Los detalles de lo aludido en el pliego no los tenemos, porque el referido documento no fue presentado antes nos en el apéndice.

[3] Los apelantes acompañaron su petitorio con la siguiente prueba documental: *Declaración Jurada* suscrita por el señor José Meléndez Fraguada; documento intitulado *Resolución Corporativa*; *Declaración Jurada* suscrita por la señora Nancy Arias Gómez; *Declaración Jurada* suscrita por la señora Wanda M. Meléndez Fraguada.

que, aunque iniciaron la escritura de hipoteca, ninguno de los otros instrumentos fue formalmente suscrito, ello en espera de que fueran enmendados. De este modo, y tras aducir que también existía controversia sobre los alegados defectos de las unidades objeto de venta, solicitaron que se denegara la solicitud de sentencia sumaria promovida por el apelado.

El 15 de enero de 2021, el apelado replicó a los argumentos en oposición que, respecto a su *Solicitud de Sentencia Sumaria*, los apelantes expusieron. Específicamente, indicó que, lejos de que existiera controversia alguna en los términos por estos expuestos, la prueba acreditaba la eficacia de su reclamo. En particular, impugnó parte de la prueba documental que los apelantes anejaron a su pliego. Al respecto, además de señalar la presentación tardía del mismo, expresó que las declaraciones juradas con las cuales los apelantes acompañaron su oposición debían tenerse por no presentadas. Al abundar, indicó que, para el 8 de agosto de 2019, se celebró una vista en la que se aprobó el *Informe de Conferencia con Antelación al Juicio* y se determinó la prueba a presentarse. Añadió que ni la declaración jurada suscrita por el apelante Meléndez Fraguada, ni aquella suscrita por su hermana, la señora Wanda Meléndez Fraguada, fueron anunciadas como parte de la prueba documental de la parte demandada. En cuanto a la señora Meléndez Fraguada, especificó que nunca fue anunciada como testigo de ninguna de las partes, hecho que también impedía la consideración de su testimonio. A ello, el apelado añadió que tampoco podía considerarse lo declarado por la señora Arias Gómez, toda vez que, mediante moción a los efectos, los apelantes informaron que no fungiría como testigo a favor de su teoría.

En su moción, el apelado también expresó que las alegaciones de los apelantes sobre la validez de las escrituras de compraventa e hipoteca carecían de apoyo y contradecían su conducta. En

particular, indicó que, pese a que tal era su argumento, estos mantenían el uso y disfrute de las propiedades y, por varios años consecutivos, amortizaron la deuda hipotecaria en controversia. Añadió, por igual, que a pesar de que los apelantes habían anunciado su intención de utilizar un perito calígrafo para invalidar el contenido de las escrituras en disputa, en el año 2018, expresamente renunciaron a utilizarlo. Con relación a ello, el apelante destacó que, durante la vista ocular celebrada el 12 de junio de 2018 en la oficina del notario autorizante de los instrumentos públicos en cuestión, se dispuso que los mismos gozaban de "la presunción de certeza que les brinda la fe pública notarial".[4]

El apelado afirmó que los argumentos de los apelantes constituían enmiendas tardías a las alegaciones y no expuestas en su contestación a la demanda enmendada. A su vez, expresó que, mientras estos exponían dichos planteamientos durante la tramitación del caso, continuaban enriqueciéndose de las ganancias provenientes de los negocios con los apartamentos, todos sin pagar la deuda por la adquisición de los mismos. Así, y tras sostener que no existía controversia alguna en cuanto a la validez de la obligación y la exigibilidad de la deuda reclamada, ello a cargo de los apelantes, el apelado solicitó que se sostuviera la determinación de declarar *Con Lugar* su moción de sentencia sumaria.

Tras varias incidencias no pertinentes a la controversia que nos ocupa, el 15 de septiembre de 2021, la Comisionada Especial presentó un *Informe Final Enmendado*. En esencia, incorporó al mismo la totalidad de las impresiones que consignó en su previo *Informe*, y expresamente indicó que no existía impedimento alguno para dictar sentencia sumaria a favor del apelado. De acuerdo con

---

[4] Véase: Apéndice, *Moción en Oposición de Sentencia Sumaria de la Parte Demandada,* pág. 209.

la funcionaria, los apelantes válidamente asumieron la obligación en disputa, suscribiendo las escrituras públicas pertinentes, consintiendo a los términos del pagaré hipotecario y constituyéndose en deudores solidarios frente a la causante del apelado. Destacó, por igual, que los apelantes estuvieron haciendo pagos, sin objeción alguna, desde el año 2008 al 2011 y que, en momento alguno, impugnaron el principal adeudado según reclamado. De este modo, y luego de expresar que la prueba documental con la que los apelantes acompañaron su escrito sobre oposición no era suficiente para derrotar los hechos establecidos por el apelado, la Comisionada Especial concluyó que procedía dictarse sentencia sumaria decretando el incumplimiento de los apelantes y el derecho del apelado de recobrar lo adeudado.

El 21 de diciembre de 2022, el Tribunal de Primera Instancia, notificó la *Sentencia* que nos ocupa. Mediante la misma, adoptó en su totalidad el *Informe Final Enmendado*. En consecuencia, dictó sentencia sumaria a favor del apelado.

Inconforme, y luego de denegada una previa solicitud de reconsideración, el 18 de septiembre de 2023, los apelantes comparecieron ante nos mediante el presente recurso de apelación. En el mismo, formulan los siguientes señalamientos:

> Erró el Honorable Tribunal de Primera Instancia al considerar la solicitud de sentencia sumaria del apelado pasado el término dispuesto por nuestras Reglas de Procedimiento Civil para presentar dicha moción dispositiva.
>
> Erró el Honorable Tribunal de Primera Instancia al declarar Ha Lugar la sentencia sumaria radicada por la parte apelada cuando existen controversias sustanciales de hechos esenciales y pertinentes sobre la validez de las escrituras de compraventa y constitución de hipoteca.
>
> Erró el Honorable Tribunal de Primera Instancia al acoger un Informe que llega a unas conclusiones sin darle un debido proceso de ley a la parte apelante.
>
> Erró el Honorable Tribunal de Primera Instancia al no permitir que la parte apelante presentara un perito

calígrafo después de haberse suspendido la vista en su fondo señalada para el 20, 22 y 23 de agosto de 2019 y no haberse reseñalado dicha vista.

Erró el Honorable Tribunal de Primera Instancia al no permitir que la parte apelante presentara un testigo que había sido previamente renunciado por la parte apelante, porque la fecha del juicio en su fondo coincidía con la fecha en que dicho testigo sería sometido a una operación de cáncer cuando se suspendió la vista en su fondo pautada para el 20, 22 y 23 de agosto de 2019 y no se ha reseñalado dicha vista.

Con el beneficio de la comparecencia de ambas partes, procedemos a esbozar el marco procesal aplicable a la presente causa.

**II**

**A**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.3; *Camaległo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Segarra Rivera v. Int'l Shipping et al*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable". *Segarra Rivera v. Int'l Shipping et al*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en

su fondo. *Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y otros,* 211 DPR 455, 472 (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41 (2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665 (2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al,* supra, págs. 979-980*; Vera v. Dr. Bravo,* 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

En lo pertinente, el ordenamiento jurídico ha reconocido que, como norma, el uso del mecanismo procesal de la sentencia sumaria para disponer de algún asunto es limitado cuando, entre otros, el mismo contiene elementos de carácter subjetivo, de intención o de propósitos mentales. *Segarra Rivera v. Int'l Shipping et al,* 980*,* supra. Sin embargo, aun cuando tales aspectos sean parte de la causa sometida a la consideración del juzgador de hechos, la doctrina valida la práctica de disponer de la misma por la vía sumaria cuando, de un examen de las particularidades del caso, surge que no existe controversia de los hechos materiales del mismo. *Íd; Ramos Pérez v. Univisión,* 178 DPR 200 (2010)*.*

Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de

hechos. *Rodríguez García v. UCA,* supra; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613, 617 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 184 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al,* supra, 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr. Bravo,* supra, pág. 334.

**B**

Por su parte, el Artículo 1206 del Código Civil de Puerto Rico, 31 LPRA sec. 3371,[5] dispone que existe un contrato desde que dos o más personas consienten a obligarse entre sí a dar alguna cosa o a prestar algún servicio. Lo anterior resulta del principio de la autonomía de la voluntad, cuya esencia radica en otorgar un amplio margen de libertad de acción a los particulares que desean obligarse, siempre que sus acuerdos sean cónsonos con la ley, la moral y el orden público. 31 LPRA sec. 3372; *VDE Corporation v. F&R Contractors,* 180 DPR 21, 33 (2010); *BPPR v. Sucn. Talavera,* 174 DPR 686, 693 (2008). Las obligaciones derivadas de los contratos tienen fuerza de ley entre las partes y deben cumplirse a tenor con

---

[5] Destacamos que, en la presente determinación, hacemos alusión directa a los términos del ya derogado Código Civil de 1930, por ser la ley vigente al momento de acontecido los hechos objeto de adjudicación.

lo acordado. 31 LPRA sec. 2994. La existencia de un contrato está sujeta a la necesaria concurrencia de los requisitos de consentimiento, objeto cierto y causa de la obligación que se establezca. 31 LPRA sec. 3391; *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 186 (2016). Así, una vez perfeccionado, el mismo no sólo obliga a lo expresamente pactado, sino también a todas sus consecuencias de acuerdo a la buena fe, al uso y a la ley. 31 LPRA sec. 3375. Acreditadas dichas condiciones, los contratos rigen la conducta de todos los involucrados, no importa la forma en que los mismos se hayan celebrado. 31 LPRA sec. 3451. De este modo, cuando un contrato es perfectamente legal, los tribunales de justicia están impedidos de relevar a una parte de acogerse a sus términos. *De Jesús González v. A.C.*, 148 DPR 255, 271 (1999); *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

En lo pertinente al contrato de compraventa, este se define como una relación contractual en la que "uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente". 31 LPRA sec. 3741; *Soto v. Rivera*, 144 DPR 500, 509 (1997). El contrato de compraventa existe si concurren los tres (3) siguientes elementos: consentimiento, la cosa y el precio. *Íd*, a la página 509. En cuanto al objeto del referido contrato, ese se entenderá entregado cuando se coloque en poder y posesión del comprador. 31 LPRA sec. 3811. En lo relacionado al precio, la parte compradora está obligada a satisfacer el mismo en el tiempo y lugar fijados en el contrato. 31 LPRA sec. 3871.

Por su parte, sobre lo que constituye un *pagaré hipotecario*, este se concibe como un instrumento negociable, por medio del cual, se crea "un compromiso escrito de pagar el dinero suscrito por la persona que se obliga a pagar," cuya promesa de pago es respaldada por una garantía real sobre un bien inmueble." *FirstBank v.*

*Registradora,* 208 DPR 64, 91 (2021). En lo que atañe a este caso, ante la existencia de un pagaré hipotecario al portador, "tan pronto como el deudor recibe el importe del préstamo y el acreedor acepta el pagaré como evidencia de la deuda, la oferta contenida en la escritura de hipoteca se convierte en un contrato válido y obligatorio para una y otra parte contratante." *Crespo Rodríguez v. González González,* 208 DPR 557, 579 (2022). De ahí la procedencia de la obligación de pago correspondiente.

**III**

En la presente causa, los apelantes plantean que erró el Tribunal de Primera Instancia al dictar sentencia sumaria a favor del apelado y, en consecuencia, a ordenarle satisfacer la cantidad reclamada por concepto de deuda. En apoyo a su contención, aducen que el foro primario incidió al acoger la moción de sentencia sumaria propuesta por el apelado, ello a pesar de que la misma se presentó fuera del término procesal estatuido y de que, a su juicio, existían controversias de hechos medulares que impedían el empleo del referido mecanismo. A su vez, los apelantes impugnan la determinación apelada, al argüir que no se les permitió la presentación de un perito calígrafo ni la de una segunda testigo, ello a fin de establecer sus defensas. Habiendo examinado los referidos señalamientos a la luz de los hechos establecidos y a la norma aplicable, confirmamos la sentencia sumaria apelada.

Un examen del expediente que nos ocupa nos lleva a concluir que el pronunciamiento que atendemos es uno conforme a derecho y a la prueba presentada. De los documentos de autos, no surge controversia alguna de hechos medulares que amerite dirimir el presente asunto mediante el cauce ordinario de adjudicación. Tras ejercer nuestras funciones revisoras, coincidimos con que, en el presente caso, concurren las condiciones procesales propias a la eficacia del mecanismo adjudicativo empleado por la sala

sentenciadora. Igualmente, intimamos que la sentencia apelada responde a una adecuada interpretación y aplicación del derecho pertinente a la materia que atendemos, ello respecto a la adjudicación de un efectivo derecho de cobro.

En principio, respecto a la alegada falta procesal relativa a la presentación tardía de la solicitud de sentencia sumaria adjudicada mediante el dictamen que revisamos, inciden en su raciocinio. Si bien los términos aplicables al mecanismo están debidamente prescritos, el ordenamiento procesal vigente, permite que su empleo quede sujeto a la concurrencia de ciertas instancias procesales debidamente consideradas por el estado de derecho que permiten prorrogar los términos, ello en atención, tanto al trámite de la causa de que trate, como al ejercicio de la discreción que, en las mismas, le asiste al adjudicador competente. En este contexto, resulta preciso destacar que la demanda de autos se presentó hace poco más de diez (10) años. El Tribunal de Primera Instancia tuvo ante sí un litigio extenso, con pormenores procesales considerables que le permitieron auscultar la forma más idónea para definir los respectivos derechos y obligaciones de las partes. Entre ellos, se hace menester apuntar el incumplimiento de los apelantes con las reglas aplicables a la oportuna tramitación de la causa. Siendo de este modo, toda vez que nada en la norma suprime la eficacia de la gestión adjudicativa empleada en cuanto a entender sobre la petición del apelado, no podemos sino resolver que ningún error cometió el foro sentenciador al acoger la *Solicitud de Sentencia Sumaria.*

En cuanto al segundo señalamiento planteado por los apelantes mediante el cual, en esencia, arguyen, que existen hechos en controversia que impiden la adjudicación sumaria, tampoco les asiste la razón. La prueba documental con la cual el apelado acompañó su *Solicitud de Sentencia Sumaria* establece la existencia

de la deuda reclamada y, por consiguiente, la obligación de pago de los apelantes. Conforme quedó establecido, el pagaré hipotecario en controversia fue debidamente suscrito por los apelantes, hecho que no solo surge de los documentos, sino, también de sus admisiones. Se desprende que la obligación consignada en el referido instrumento, por un monto de $350,000.00, fue debidamente asumida por los apelantes. Con independencia de su alegada inconformidad, ello por reflejar, un precio de compraventa con el que, según plantean, no estaban de acuerdo, lo cierto es que los apelantes válidamente se constituyeron en deudores frente a la causante del apelado. De hecho, las circunstancias particulares de la negociación de referencia nos permiten intimar que estos reconocieron el carácter vinculante de la transacción. Es un hecho indefectible el que los apelantes efectuaron las mensualidades correspondientes a la amortización de la deuda resultante del negocio de compraventa de los inmuebles, todo de manera ininterrumpida desde el año 2008 hasta el año 2011. Igualmente, desde perfeccionada la obligación, asumieron la posesión inmediata de los apartamentos, llevando a cabo los actos de dominio propios a su condición de titulares y, hasta el presente, beneficiándose de los mismos. Por tanto, no vemos cómo, ante ello, los apelantes pretenden soslayar el deber legal que les asiste frente al apelante.

Por su parte, aun cuando los apelantes sostienen que ni la escritura de compraventa, ni la de hipoteca, fueron debidamente suscritas, entendemos que, ante la efectiva firma del apelante Meléndez Fraguada en el pagaré, lo anterior no obsta para legitimar el derecho de pago del apelado. Precisa destacar que la prueba documental revela que las partes de epígrafe tuvieron la oportunidad de inspeccionar los aludidos instrumentos públicos en la oficina del notario que otorgó ambas escrituras. Según surge, a dicho momento, los comparecientes coincidieron con que las mismas

cumplían con las exigencias legales pertinentes en materia de derecho notarial para sostener su presunción de validez. Por tanto, en defecto de prueba en contrario, y toda vez que el asunto en cuestión quedó sujeto a la evidencia sometida a su escrutinio, estamos impedidos de acoger los argumentos de los apelantes.

De otra parte, respecto al señalamiento por el cual los apelantes aducen que acoger el *Informe Final Enmendado* suscrito por la Comisionada Especial designada al caso, constituyó un quehacer judicial lesivo a su debido proceso de ley, toda vez que, según sostienen, no se celebró una vista en la que pudieran "expresarse y/o defenderse".[6] No obstante, es nuestro criterio que erra en su afirmación. El *Informe* en cuestión expresamente indica que el mismo es el resultado de la moción dispositiva presentada por el apelado, ello a fin de proveer para la adjudicación sumaria del asunto, así como de los pliegos derivados de la misma, incluyendo el escrito en oposición sometido por los apelantes. En estrictos términos procesales, la celebración de una vista no resultaba compatible con el referido quehacer, toda vez que, tanto la Comisionada Especial, como el tribunal, contaban con la prueba documental requerida para finiquitar la controversia entre las partes. Además, huelga destacar que las determinaciones incluidas en el *Informe* estaban debidamente sustentadas, hecho que no solo sostiene la validez de las conclusiones emitidas, sino, también, la determinación judicial de apoyar la *Sentencia* emitida en las mismas. Del mismo modo, apuntamos que, conforme se desprende de autos, los apelantes fueron notificados de todos los escritos emitidos por la Comisionada Especial y por el foro sentenciador. A su vez, se les salvaguardó su derecho a ser oídos y pudieron exponer sus objeciones a las órdenes emitidas en la tramitación la causa.

---

[6] Véase: *Apelación Civil*, pág. 18.

Destaca, en particular, la oportunidad que el foro primario le concedió para expresarse en torno al *Informe Final* [7] y al *Informe Final Enmendado*.[8] Por tanto, entendemos que ninguna afrenta a sus derechos procesales y sustantivos se cometió.

Finalmente, en sus últimos dos señalamientos, los apelantes sostienen que se les debió permitir la presentación de un perito calígrafo, así como la de una segunda testigo, todo a fin de poder sustentar su postura. Sin embargo, el expediente que tuvimos a nuestro haber examinar revela que estos expresamente renunciaron al empleo de los referidos testigos. Ciertamente, dicha determinación, totalmente voluntaria y atribuible a estos, dio paso a que, el tribunal, en consideración a la avanzada etapa de los procedimientos y a lo prolongado del litigio de autos, válidamente impusiera su determinación discrecional de no proveer para lo requerido.

El expediente que nos ocupa nos ha permitido constatar que las determinaciones emitidas por el Tribunal de Primera Instancia encuentran apoyo legal y fáctico en los documentos presentados. Así, por no existir controversia de hechos alguna sobre la corrección de la obligación de pago impuesta a los apelantes que amerite el cauce ordinario de los procedimientos, sostenemos lo resuelto.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] Véase: Apéndice, *Orden del 18 de diciembre de 2020,* página 213.
[8] Véase: Apéndice, *Orden del 4 de octubre de 2021,* página 271.